[Crim. No. 16993. Second Dist., Div. Two. Apr. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NANCY JOYCE MEYERS, Defendant and Appellant.

## COUNSEL

Gerald Manpearl, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Timothy F. O'Leary, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, J.**—By information appellant, Nancy Joyce Meyers, was charged with a violation of section 11500 of the Health and Safety Code (possession of heroin). A motion under Penal Code section 995 to set aside the information was denied. Appellant entered a plea of not guilty and thereafter made a motion to suppress evidence pursuant to Penal Code section 1538.5. In support of the motion it was stipulated that the court could read and consider the transcript of the preliminary hearing subject to the right of both sides to offer additional evidence. At the conclusion of the hearing (at which additional testimony was presented), the motion was denied.

When the matter came on for trial, appellant withdrew her plea of not guilty and pleaded guilty to the offense as charged. Proceedings were adjourned and the trial court ordered a petition filed in department 95 of the superior court pursuant to Welfare and Institutions Code section 3051 to determine whether appellant was addicted to the use of narcotics or by reason of repeated use of the same was in imminent danger of becoming addicted. Appellant was committed to the California Rehabilitation Center pursuant to section 3051 of the Welfare and Institutions Code.

Appellant filed a notice of appeal from the judgment rendered against her and from the order denying her motion under Penal Code section 1538.5.[1]

---

[1]It is clear from appellant's brief that the basis of the appeal was the denial of appellant's motion to suppress. Nowhere is it suggested that the alleged illegally obtained evidence was used against her at the commitment proceedings which took place after her plea of guilty. When an appeal from a guilty plea is instituted on the only grounds that the order denying the motion to suppress should be vacated, no certificate of probable cause is required. (Pen. Code, § 1237.5; *People* v. *Rose,* 267 Cal.App.2d 648 [73 Cal.Rptr. 349]; *Moran* v. *St. John,* 267 Cal.App.2d 474 [73 Cal.Rptr. 190].)

## STATEMENT OF FACTS

Officer Robert D. Cody (Cody) of the Narcotics Division of the Los Angeles Police Department received information from a confidential informant that a Dorothy Agnewson (Agnewson) was using and selling narcotics at an apartment in the City of Los Angeles. The informant had not only observed narcotics within the apartment but had been present when purchases of narcotics had been made. Such observations had taken place from one to four days prior to January 22, 1968, the date of the arrest of appellant.

On said January 22, 1968, Cody proceeded to the apartment building and had a conversation with the manager. The latter told the officer that he had observed numerous persons who did not live in the apartment entering and leaving the premises occupied by Agnewson and that on one occasion he had seen an individual who resided therein under the influence of something. The manager further told the officer that Agnewson originally was living with another female and that two additional females had moved into the apartment although one had recently vacated.

Cody requested a key to the apartment located across the hall from the one occupied by Agnewson and the other females. After Cody was taken to the apartment he was joined by three other police officers and together the group commenced a surveillance. After the passage of about 10 minutes three females and a male appeared in and around the open doorway to the Agnewson apartment. Cody recognized one of the females as Sandra Bryant, a narcotic user well known to the police. Cody immediately displayed his badge and identified himself as a police officer. The male in the group, William Howard, made a rapid motion towards his belt and Cody, believing that Howard was reaching for a weapon, entered the apartment, grabbed Howards' arm and conducted a fast pat down for weapons.

At that moment Cody heard footsteps emanating from another part of the apartment and also heard the flushing of a toilet. Releasing Howard, Cody ran towards the rear of the apartment, entered the bathroom where he observed appellant standing near the toilet. Sergeant Garrahan (Garrahan) one of the other police officers involved in the investigation also heard the footsteps and the flushing of the toilet and he also entered the bathroom where he observed the water in the toilet bowl was still swirling. He also saw a blue object in the water and upon retrieving the same discovered it to be a piece of blue tissue paper.

Garrahan then observed numerous needle marks and scab formations on appellant's arms which in his opinion had been made within the previous 21 days. Placing appellant under arrest, he returned with her to the living room. At that time Garrahan saw a protrusion in the pocket of the blouse

worn by appellant. Garrahan asked appellant, " 'Do you have something in that pocket you shouldn't have?" Appellant made no reply but stepped back and started to put her hand toward the pocket. Garrahan then insered two fingers into the blouse pocket and removed a portion of a blue balloon which contained a powdery substance. The balloon and contents were produced at the preliminary hearing and it was stipulated that a forensic chemist had made both chemical and physical examinations of the substance and had determined that the same was heroin (approximately 300 milligrams).

Thereafter the officers conducted a search of the apartment and another officer present during the arrest discovered a bindle under a sofa cushion. The bindle also contained heroin.

The officers did not have an arrest or search warrant when they entered the apartment and arrested appellant.

### APPELLANT'S CONTENTIONS

Appellant contends that:

(1) There was no probable cause for the arrest of appellant and that the search that followed was illegal; and

(2) The prosecution should have been required to disclose the identity of the confidential informant.

### FIRST CONTENTION

Appellant contends firstly that the search of her blouse pocket can be justified only if it was incidental to a lawful arrest. Relying primarily upon *People* v. *Ferguson,* 214 Cal.App.2d 772 [29 Cal.Rptr. 691], appellant argues that her arrest cannot be sustained solely upon the basis of the officer's observation of what appeared to be needle marks on the arrestee's arms. The facts in *Ferguson* bear slight relationship to those in the cause at bench and only a brief reference to the same is necessary.

In *Ferguson* two police officers riding in an unmarked patrol car in broad daylight observed two men standing on a front lawn of an apartment building. The officers stopped their car and after leaving the vehicle, began questioning the two individuals. One officer observed marks on one of the arms of one of the men which appeared to the officer to have been caused by an injection of a needle in the administration of heroin or a drug. An arrest was then made and a search of the apartment occupied by the men followed. During the search an incoming telephone call was intercepted by the police who upon the basis of the information garnered from the telephonic conversation proceeded to Ferguson's apartment. After entry into

Ferguson's apartment a search was made which resulted in the discovery of 15 marijuana seeds among some debris. The officers did not have either a warrant or a search warrant. An arrest ensued and Ferguson appealed after being convicted of the charge of possession of marijuana. The Court of Appeal reversed.

That court pointed out that "When an arrest or search is made without a warrant, the burden rests on the prosecution to show a proper justification. [Citation.]" *(People* v. *Ferguson,* at p. 775.) After defining what constitutes reasonable or probable cause for an arrest, the court continued, "It is conceded by the People . . . that no case has been found involving an arrest without a warrant made solely on the basis of the observation by an officer of the presence of what he believes to be hypodermic marks.

"There is nothing in the record of the case before us which establishes that Simpson [the man first arrested] was known to the officers as being connected in any way with narcotics. The only basis shown for any suspicion is the observation by the officers of what he testified appeared to him to be needle marks.

". . . . . . . . . . . . . . . . . . . . .

"We hold that the People have not carried their burden in this case of showing reasonable or probable cause for the arrest and we therefore find the arrest to be illegal. Following the rule that a search cannot be justified by what it turns up, the search of Simpson's apartment was likewise unlawful. [Citations.]" *(People* v. *Ferguson,* at pp. 775, 776.)[2]

While the principles enunciated in *Ferguson* undoubtedly represent a correct statement of the law the end result is entirely different if additional factors are present which make the arrest reasonable. Indeed, all other authorities cited by appellant in support of her first contention lend little support for her position on this issue. As stated in *People* v. *Ibarra,* 60 Cal. 2d 460, at p. 463 (fn. 1) [34 Cal.Rptr. 863, 386 P.2d 487], "Recent cases indicate that injection marks alone do not give probable cause for arrest [citation], but that they do if there is additional evidence suggesting that defendant is a narcotic user [citations] . . ." In the cause before this court additional factors were present which supplied probable cause for the officer without a warrant to arrest the appellant.

■ Information obtained from a reliable informant may in itself constitute reasonable cause to make an arrest and search without a warrant. (See

---

[2]The court proceeded further to hold that Ferguson had standing to object to the introduction of evidence obtained as a result of the unlawful arrest and search of Simpson and his apartment. "With this evidence excluded no conviction of defendant [Ferguson] would have been possible for no probable cause would have existed to permit the entry of defendant's apartment." *(People* v. *Ferguson, supra,* at p. 778.)

*People* v. *De Santiago,* 71 Cal.2d 18, 21-22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535].)  ▮  In the case at bench considerable information had been supplied to the officers by an informant (whom the trial court found to be reliable) as is hereinafter set forth.

The officers had been advised by the informant that Agnewson and another female whose name was unknown were using and selling narcotics at a specified apartment. They were further told that the "other female" was a heavy set young woman (identified as the appellant) who must be watched carefully as in all probability narcotics would be found on her person. The informant also related that as recently as one to four days prior to the day of appellant's arrest he had been to the apartment and had observed persons using and purchasing narcotics.

Even if we assume that the intelligence set forth, *supra,* was not legally sufficient in itself to constitute probable cause for an arrest, the same justified further investigation by the officers. Additional facts were then presented which supplied reasonable cause for the officers to believe that appellant had committed a felony. (Pen. Code, § 836.) (See *People* v. *Berutko,* 71 Cal.2d 84, 90-91 [77 Cal.Rptr. 217, 453 P.2d 721].) These facts were revealed to the officers as a result of inquiry of the apartment manager and through surveillance by the officers of the premises occupied by Agnewson and appellant.

The apartment manager told the officers of the considerable traffic to and from the apartment of Agnewson and of his observation of one of the occupants of the premises being under the influence of something. The manager also supplied further description of appellant.

During their surveillance the officers observed in the open doorway of the apartment several individuals including one who was a well known narcotics user. The officers were entitled to consider the presence of the addict at the scene as another factor in their investigation (see *People* v. *Torres,* 56 Cal.2d 864, 867 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Morales,* 259 Cal.App.2d 290, 296 [66 Cal.Rptr. 234]) and to draw an inference that it was probable that there was a supply of narcotics within. (See *People* v. *King,* 234 Cal.App.2d 423, 428 [44 Cal.Rptr. 500].)

As the officers displaying their badges vocally identified themselves, two of the females in the doorway jumped back into the apartment and the sole male in the group made a furtive movement towards his waist. When the officers heard footsteps of a person running down the hallway and the sound

of a toilet being flushed, they were justified in concluding that someone was attempting to dispose of narcotics. (See *People* v. *Torres, supra,* at p. 867.) Discovering appellant standing over the toilet bowl with the water swirling therein and observing in plain sight appellant's arms with the incriminating marks and scabs, the officers were provided with the necessary probable cause for the arrest. The subsequent seizure of the balloon of heroin from appellant's blouse was proper as being incidental to a lawful arrest.

## SECOND CONTENTION

■ Appellant further contends that the prosecution should have been required to disclose the identity of their reliable informant. Appellant relies entirely upon *People* v. *Garcia,* 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366] in support of this contention. An examination of *Garcia* leads us to the conclusion that the facts as stated therein vary substantially from those in the cause before this court.

In *Garcia* a search warrant was issued authorizing the immediate search of certain premises and of three named persons. Garcia's name did not appear either in the warrant or in the affidavit for the warrant. The supporting affidavit of an officer stated that two reliable informants had related that they had made purchases of narcotics at the premises described in the warrant of two of the individuals named in the warrant.

At the time of the service of the search warrant the officers found all three of the individuals within the premises and also discovered Garcia, dressed only in his undershorts, lying on a mattress in the dining room with a female also not named in the warrant. A subsequent search of the premises disclosed substantial quantities of heroin aud marijuana and miscellaneous paraphernalia used in packaging and sale of heroin. The narcotics were found under the mattress upon which Garcia and his female companion were lying. Garcia at the time of his arrest claimed ownership of all of the narcotics and stated that he had lived at the apartment for several days. At trial Garcia repudiated such statements and denied that he had been in the apartment previously. He testified that he was fully dressed when the officers arrived, and that he had been in the apartment only for the purpose of getting a "fix."

A pretrial motion was made by Garcia to compel disclosure of the identity of the two informants relied upon by the officer in his affidavit. The motion was denied. At trial, a renewed demand for disclosure of the identity of the informants was made and the trial court ruled adversely to Garcia. He was convicted of possession of heroin for sale and of possession of marijuana.

The Supreme Court in reversing held that although the informants were

neither participants in nor eyewitnesses to the alleged crime, such informants were deemed to be material witnesses for Garcia's defense. The court was of the opinion that it was highly significant that the warrant and the affidavit made no mention of Garcia. Further, and more importantly, the court concluded that the informants could supply direct evidence supportive of defendant's position—e.g., the quantity of narcotics kept on hand by the indivduals named in the warrant, the place where the narcotics were cached, the names of all residents and occupants of the apartment during the specified period of time.

While the informers in *Garcia* could have been material witnesses for the defense, such could not have been in the cause before this court. Appellant was found to be in possession of heroin at the time of her arrest, the same being on her person. The numerous puncture marks and scabs clearly demonstrated that she was no neophyte with respect to the use of narcotics and the same was supportive evidence indicating appellant was aware of the narcotic nature of the substance found in her pocket. The informant, if his identity was disclosed, and if called as a witness, could supply no testimony material to appellant's defense.

As stated in *Garcia, supra,* at page 839, "We emphasize that a defendant seeking to discover the identity of an informant bears the burden of demonstrating that, 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.]" The appellant has not met that burden either at trial or on appeal.

The purported appeal from the order denying appellant's motion to suppress evidence pursuant to Penal Code section 1538.5 is dismissed.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.