19 Cal.App.3d 58 (1971)
96 Cal. Rptr. 513
THE PEOPLE, Plaintiff and Respondent,
v.
LARRY DUANE SHIPSTEAD, Defendant and Appellant.
Docket No. 8549.
Court of Appeals of California, First District, Division One.
July 8, 1971.
*63 COUNSEL
Larry A. Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.
Thomas C. Lynch and Evelle J. Younger, Attorneys General, Gloria F. De Hart and Ira J. Ross, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
SIMS, J.
Defendant has appealed from a judgment sentencing him to state prison for possession of a restricted dangerous drug for sale in violation of section 11911 of the Health and Safety Code, and suspending sentence for simple possession of such a drug in violation of section 11910. He was convicted of those offenses after a trial by the court, a jury trial having been waived, on the evidence adduced at his preliminary examination and at a hearing on his motion to suppress. He contends that the restricted dangerous drugs which he was convicted of possessing were seized from him and a companion as a result of an arrest without probable cause, and that the trial court erred in denying his motion to suppress that evidence; that the court erred in denying his motion for the disclosure of the identity of an informant; that there is insufficient evidence as a matter of law to find defendant guilty of possessing the drugs for sale; that he was denied the effective assistance of counsel because he and his codefendant were jointly represented by the same attorney; and that he was erroneously convicted of both possession for sale and simple possession of a restricted drug, because the latter offense is included in the former. It is concluded that the trial court erred in denying defendant's motion for the disclosure of the identity of the informant. Since there is no other error in connection with defendant's conviction of possession of a restricted drug for sale, and the evidence sought may or may not affect the ruling *64 on the motion to suppress the evidence, the proceedings should be remanded with instructions to set aside the conviction for simple possession, which was concededly erroneous as a conviction of a lesser included offense, and to set aside the conviction for possession for sale, only if the evidence sought indicates that the information, upon which the officers acted, was secured as a result of a violation of defendant's constitutional rights.

I
Prior to May 4, 1969, the San Francisco Police Department had received information over a long period of time regarding a narcotics operation which was being conducted by the defendant, Larry Duane Shipstead, his codefendant, Tak Kusano, and one Larry Lee, between Portland, Oregon, San Francisco, and Los Angeles and Sacramento. Sergeant Christensen of that department testified that there were at least four informants who gave him information on different occasions, some of them just one time, some of them on more than one occasion. He indicated that he would rather not disclose the identity of those informants. It was brought out that the first informant who talked to the sergeant, who was designated as "Informant A," was a reliable informant who had previously furnished information which proved correct and accurate and had resulted in several arrests. Further inquiry along that line was interrupted by the attorney for the defendants who requested that the prosecution proceed to the information which resulted in the action taken on May 4 when the defendants were arrested. He left the courts' inquiry, "You don't have any quarrel with the reliability of the informants in general?" unanswered, except for his request to proceed with respect to the information which the officer received on the day of the arrests.
The sergeant testified that between 7:30 and 8 p.m. on the evening of May 4, 1969, an informant, designated as "Informant D," advised him that of the three suspects, whose names were discussed with the informant, two, but which two the informant did not know, would be on a designated flight from Portland to San Francisco, arriving at a specified time, with an amount of narcotics and dangerous drugs which were to be delivered to San Francisco that evening. The informant stated that he had been asked to either pick them up at the airport, or furnish transportation for someone else who would meet them at the airport. He said he had heard that the suspects were supposed to be bringing "a shipment of stuff" down from Portland. He was not to be the recipient of the drugs and did not know the quantity that would be bought. The sergeant, on the basis of his knowledge of the activities of the suspects, believed that it would be a large quantity  one pound, two pounds or three pounds. According to the officer the informant refused to furnish transportation for the suspects and was not at the airport that night.
*65 "Informant D" had never furnished any information prior to the time the sergeant received the foregoing telephone call,[1] and the prosecution did not contend that he or she, as the case might be, was an established reliable informant. On cross-examination the officer testified that to the best of his knowledge "Informant D" was not employed, and more particularly that he was not employed at a hotel to which one of the suspects had admittedly made a telephone call.
The sergeant further testified that prior to May 4, he knew all three suspects and what they looked like, and that he had arrested Shipstead and Kusano on previous occasions. He recognized and identified them in court. He stated that on November 4, 1968, he arrested Shipstead and charged him with five offenses, four apparently relating to violations of the Health and Safety Code, and that he was ultimately convicted of violation of section 11910, possession of a restricted dangerous drug, and two other offenses; that he again arrested Shipstead on January 8, 1969 for two violations of the Health and Safety Code, and for contributing to the delinquency of a minor; and that those charges were thereafter dismissed; that on April 23, 1969 he arrested Shipstead for violation of Penal Code section 496 and for violation of a local ordinance prohibiting possession of a dangerous weapon, and that those charges were dismissed; that he had arrested Shipstead apparently on April 23, 1969, as he was leaving Kusano's apartment; and that "he had in his possession a slip which indicated the sales of dangerous drugs amounting to twenty-four ounces over the previous three days, and also on this slip was the list of his expenses which included a plane ticket fare from Tak Kusano to Portland, Oregon, and return, in addition to monies which he had given to Tak." The defendant objected to the testimony last quoted because that arrest was allegedly illegal. The prosecutor withdrew the question, but it was never determined whether that arrest was illegal, and the sergeant's explanation of his prior knowledge concerning the relationship of Shipstead with Kusano was not stricken.
The officer testified that he had arrested Kusano about 3 a.m. on May 3, 1969 for possession of narcotic or dangerous drug paraphernalia, and possession of a laboratory (sic).
*66 Armed with the foregoing information and pictures of Shipstead and Lee, on May 4, 1969, Sergeant Christensen and two other officers from San Francisco went to meet the designated flight at 9 p.m. at the San Francisco airport in San Mateo County. There they were joined by San Mateo County Deputy Sheriff Franzoia and a second deputy. The officers, all in uniform, took a stand at the top of the movable ramp which ran from the concourse out to the plane. Shipstead disembarked first, followed by Kusano about two feet to his rear and to the left. When they were about 20 or 25 feet away Kusano stopped. Shipstead continued on toward the officers. Christensen observed Kusano quickly bend down until his hand appeared to touch the floor of the ramp. Christensen stopped Shipstead and asked him if he could talk to him a minute, and they walked over to the side of the passageway. Meanwhile other officers ran down the ramp and appeared to be struggling with Kusano. According to Deputy Franzoia, Kusano appeared after Shipstead had been requested to step off to one side, and he was identified by the statement of a San Francisco officer; Kusano then with his left hand proceeded to push what appeared to be an airline or car rental company envelope through the bellows of the movable ramp; the officers ran to attempt to stop him, and after a slight struggle took him into custody. Franzoia continued through the ramp and the plane and descended to the ground. There he found an envelope which contained two plastic bags holding a white powder which proved to be 15.5 grams of desoxyephedrine.
Franzoia returned with the envelope to where the other officers were holding Shipstead and Kusano, and the two suspects were placed under arrest and taken to the sheriffs' office substation. There a pat search of Shipstead revealed a large bulge concealed in his left sock. Officer Christensen removed a bag containing white powder which proved to be 29.65 grams of desoxyephedrine.
The defendants, who testified in support of the motion to suppress, did not contradict the foregoing testimony concerning the events which transpired. Shipstead stated that he observed Sergeant Christensen and continued to walk towards him; that Christensen stopped him and detained him; that he was not placed under arrest but that he was restrained by the presence of the officer. Kusano testified that he did not see Shipstead being arrested, that he saw the officers talking to Shipstead, and that he threw the envelope away because he feared he would be arrested, although he did not know whether or not the officers had a warrant.
(1a) The defendant contends that the foregoing facts fail to support the finding of the trial court that there was probable cause for his arrest and subsequent search. He points out that the standards for a warrantless *67 arrest are at least as stringent as those for the issuance of a valid warrant for an arrest or search (see Spinelli v. United States (1969) 393 U.S. 410, 415-419 [21 L.Ed.2d 637, 643-645, 89 S.Ct. 584]), and that the evidence concerning the information received from the four informants concerning the general and specific activities of defendant, his codefendant and Lee, fails to satisfy the requirement that the information must show the basis for the informant's belief, and that the informant was a percipient witness of the alleged illegal acts (see Aguilar v. Texas (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509]; and People v. Hamilton (1969) 71 Cal.2d 176, 179-182 [77 Cal. Rptr. 785, 454 P.2d 681]). He also points out that the officers' knowledge of the prior alleged illegal conduct of the defendant is not sufficient to give rise to probable cause that the defendant was engaged in illegal conduct at the time he was arrested (see People v. Gallegos (1964) 62 Cal.2d 176, 179 [41 Cal. Rptr. 590, 397 P.2d 174]). In fact he suggests that the discrepancy between the conviction record and the record of arrests made by Sergeant Christensen is such as to render the officer's testimony valueless because of bias. It is unnecessary to consider this contention. The officer's credibility and the weight to be given his testimony were matters for the trial court.
The People do not contend that the sergeants' personal knowledge of the defendant's activities, and the information he had acquired from others gave rise to probable cause to arrest. They assert that it did give cause to detain and question the defendants concerning the report received. The officers would certainly be remiss in their duties if they failed to investigate the report of the transportation of narcotics and restricted dangerous drugs. (The question of the admissibility of that report is discussed below.) Defendant's reliance on Cunha v. Superior Court (1970) 2 Cal.3d 352 [85 Cal. Rptr. 160, 466 P.2d 704] and Irwin v. Superior Court (1969) 1 Cal.3d 423 [82 Cal. Rptr. 484, 462 P.2d 12] is misplaced. In Cunha there was no attempt to investigate what the officers considered to be suspicious circumstances. The defendant was summarily arrested and searched on information which the Supreme Court considered insufficient to give rise to probable cause (see 2 Cal.3d at pp. 355-357). Similarly in Irwin there was no attempt to determine if the defendant was in fact connected with the arrested suspect before the defendant was arrested and searched (see 1 Cal.3d at pp. 427-429).
The information known to the officers, when corroborated in part by the appearance of the suspects debarking from the plane on which they reportedly were to arrive, was sufficient to warrant the detention of the suspects for questioning. (See Cunha v. Superior Court, supra, 2 Cal.3d 352, 355-356; People v. Berutko (1969) 71 Cal.2d 84, 90 [77 Cal. Rptr. 217, 453 P.2d 721]; People v. Sandoval (1966) 65 Cal.2d 303, 307 [54 Cal. *68 Rptr. 123, 419 P.2d 187]; People v. One 1960 Cadillac Coupe (1964) 62 Cal.2d 92, 95-96 [41 Cal. Rptr. 290, 396 P.2d 706]; People v. Mickelson (1963) 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; People v. Meyers (1970) 6 Cal. App.3d 601, 607 [86 Cal. Rptr. 252]; People v. Gaines (1968) 265 Cal. App.2d 642, 646 [71 Cal. Rptr. 468] [cert. den. 394 U.S. 935 (22 L.Ed.2d 467, 89 S.Ct. 1212)]; People v. Carmical (1968) 258 Cal. App.2d 103, 106 [65 Cal. Rptr. 504]; People v. Machel (1965) 234 Cal. App.2d 37, 43 [44 Cal. Rptr. 126] [cert. den. 382 U.S. 839 (15 L.Ed.2d 81, 86 S.Ct. 88)]; and People v. Hilliard (1963) 221 Cal. App.2d 719, 723 [34 Cal. Rptr. 809].)
Although there is some discrepancy in the testimony relating to the time sequence between the detention of Shipstead and the incriminating actions of Kusano, it is clear that the latters' act occurred so contemporaneously with the restraint placed on the former, that there was no opportunity to begin questioning Shipstead.
The defendant insists, however, that he cannot be incriminated by the acts of another (see Irwin v. Superior Court, supra, 1 Cal.3d 423, 427-428). In Irwin there was no such concatenation of facts linking the suspects as those which were known to the officer in this case. It would have been a remarkable coincidence if the two, on the basis of what was known about them, had arrived on the same plane from Portland without concert of action. In People v. Reeves (1964) 61 Cal.2d 268 [38 Cal. Rptr. 1, 391 P.2d 393], where there was an established relationship between two suspects, the court noted, "If this cigarette were `found' legally this might constitute corroboration of the information given by the anonymous informer  it would corroborate the informers' statement that McDonald was presently possessed of marijuana, and this might very well constitute a basis for believing that if McDonald was possessed of marijuana, Reeves might also be." (61 Cal.2d at p. 274.)
(2) It is true, as contended by defendant, that probable cause cannot be established from contraband which is revealed by the suspect's attempt to evade an illegal search or an illegal arrest. (See Badillo v. Superior Court (1956) 46 Cal.2d 269, 273 [294 P.2d 23]; People v. Zabala (1963) 217 Cal. App.2d 550, 554 [31 Cal. Rptr. 712]; Gascon v. Superior Court (1959) 169 Cal. App.2d 356, 358 [337 P.2d 201]; and People v. Harvey (1956) 142 Cal. App.2d 728, 732 [299 P.2d 310].) (1b) In this case, however, as outlined above, there was reasonable cause to investigate. Kusano's attempt to dispose of the contraband he carried was not impelled by any effected or threatened illegal action by the officers, but his own sense of guilt. (See People v. Gaines, supra, 265 Cal. App.2d 642, 645-646; People v. Carmical, supra, 258 Cal. App.2d 103, 106; People v. Poole *69 (1959) 174 Cal. App.2d 57, 60 [344 P.2d 30]; and People v. Anders (1959) 167 Cal. App.2d 65, 67 [333 P.2d 854].)
(3) "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.]" (People v. Ingle (1960) 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577] [cert. den. 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].) "Each case must be decided on its own facts and circumstances [citations]  and on the total atmosphere of the case. [Citations.]" (Id.) (1c) When the suspects debarked from the plane and one revealed that he was carrying, and attempted to dispose of, what appeared to be contraband, the information previously known to the officers was sufficiently corroborated. (See Draper v. United States (1959) 358 U.S. 307, 313 [3 L.Ed.2d 327, 332, 79 S.Ct. 329]; People v. Sandoval, supra, 65 Cal.2d 303, 308 [cert. den. 386 U.S. 948 (17 L.Ed.2d 878, 87 S.Ct. 985)]; People v. Love (1970) 8 Cal. App.3d 23, 29 [87 Cal. Rptr. 123]; In re Steinke (1969) 2 Cal. App.3d 569, 579-580 [82 Cal. Rptr. 789]; People v. Davis (1969) 2 Cal. App.3d 230, 235-236 [82 Cal. Rptr. 561]; People v. Castillo (1969) 274 Cal. App.2d 508, 511 [80 Cal. Rptr. 211]; and People v. Melchor (1965) 237 Cal. App.2d 685, 689 [47 Cal. Rptr. 235].) The officers were entitled to evaluate what they had heard and what they observed in the light of defendant's prior conduct. (See People v. Rodriquez (1969) 274 Cal. App.2d 770, 775 [79 Cal. Rptr. 240].) There being probable cause to arrest both defendants, their arrests and the subsequent search of Shipstead were proper if the testimony concerning the information from "Informant D" was properly before the court.

II
Sergeant Christensen testified to the information received from "Informant D" after stating that he would rather not name any of the informants. He also expressly refused to consent to the disclosure of their identity. On cross-examination the defendants' attorney established that Christensen knew the name of "Informant D." His request for the name of the informant met with an objection that the identity was a privileged matter under section 1041 of the Evidence Code,[2] although the information was admissible, *70 despite nondisclosure of the witness' identity, under the provisions of subdivision (c) of section 1042 of that code.[3] The prosecution also pointed out that the informant was in no way a material witness as to the guilt or innocence of the defendants; and that since there was other evidence sufficient to establish probable cause it was unnecessary to disclose the privileged information concerning the informants' identity. Thereupon, following the noon recess, the defendant's attorney announced that he would proceed to show the materiality of the informant's testimony. He established that the informant had told the officer that he was requested to either pick the suspects up at the airport or furnish transportation for someone else who was to meet them at the airport. He also introduced the testimony of Christensen, Kusano and Miss Werner, their acquaintance, to show that Kusano had made the reservation for the flight on the afternoon of May 4 in their own names; that he told Shipstead, but no one else, about the reservations and their intention to leave Portland that day; that he did not see any friends or acquaintances or anyone he knew at the Portland airport; that Shipstead, after they decided to come to San Francisco and after Kusano made the reservations, telephoned Miss Werner at her room in a San Francisco hotel and requested her to pick them up at the airport; that he did not tell anyone other than Kusano or Miss Werner of his plans to come to San Francisco that evening; that he never mentioned to Miss Werner *71 that he was transporting drugs; that Miss Werner received Shipstead's call in the room she occupied; that he told her he was coming down on a United Airlines flight which would arrive around 9 o'clock; that he did not mention dangerous drugs; that she walked outside and found a friend to drive her to the airport but did not disclose her purpose; that she remained in her friend's company until they arrived at the airport at a time following the arrest of defendant and his co-defendant; and that the driver did not make any telephone call. Miss Werner also testified that an individual referred to as "Shadow," who had a key to the room she occupied, was supposed to drive her to the airport, but was not available; that she taped to the mirror in the locked room a message, in abstract form, referring to Shipstead as "lecherous lord of the lowlands," which would let "Shadow" know she was going to the airport to pick up Shipstead; and that she talked to no one else before going to the airport.
It was the defendant's contention that the inferences and circumstances pointed to the fact that Shipstead's telephone message had been intercepted, and that the information so obtained should be excluded, and the arrest of the defendant set aside because it was the fruit of the poisoned tree.
Argument and points and authorities submitted with respect to the motion to suppress are not a part of the record. It, therefore, does not appear whether the defendant renewed his demand for the identity of the informant, or objected to the use of the information revealed in the absence of such disclosure. The motion was denied on September 26, 1969. On the same day the attorney for the defendant prepared a notice of motion for pretrial discovery and his declaration and a memorandum of points and authorities in support of the motion. Included in the notice of motion was a demand for the following: "2. The names and present addresses of all informers referred to in the testimony given by officer DAVID CHRISTENSEN at a hearing of a motion to suppress evidence heard before the above-entitled Court on September 12, 1969, and therein referred to as `Informer A,' `Informer B,' `Informer C,' and `Informer D.'" The declaration presented, on information and belief, the defendants' theory that "Informant D," as agent of Sergeant Christensen, either intercepted the telephone call from Shipstead to Miss Werner, or broke into her room and obtained and revealed the contents of the written message left for "Shadow." At a hearing on the motion on October 24, 1969, it appeared that all information demanded, except the identity of the informant and other matter which is not material on this appeal, had been furnished. On October 27, 1969 the motion for discovery was denied as it referred to the disclosure of the names of the informants.
(4a) On November 4, 1969 the matter was submitted on the merits and continued for decision. In his points and authorities defendant contended *72 that the prosecution was not entitled to the protection of section 1042, subdivision (c) of the Evidence Code because "Informant D" was not shown to be a "reliable informant" within the provisions of the statute. He also brought out that if the prosecution failed to disclose the identity of the informant, the testimony concerning what he disclosed should be stricken.
From the foregoing it is clear that the defendant throughout was objecting to the use of the information secured from "Informant D." He pointed out that there was no evidence to establish that "D" previously had proved a reliable informant, that there was no evidence to show the manner in which "D" acquired the information which he relayed to Sergeant Christensen; and that the only person who could refute his claim that the information had been acquired in violation of the suspects' constitutional rights was the informant himself.[4] The People's claim that the defendant is attempting to raise these contentions for the first time on appeal is not borne out by the record. (See Honore v. Superior Court (1969) 70 Cal.2d 162, 167, fn. 5 [74 Cal. Rptr. 233, 449 P.2d 169]. Cf. Pen. Code, § 1259; Evid. Code, § 353, subd. (a); and see People v. Calliham (1947) 81 Cal. App.2d 928, 933 [185 P.2d 342].)
Nor can this issue be disposed of on the theory that since the suspects appeared on the landing ramp, disembarking from the Portland plane, "D" became established as a reliable informant (see Draper v. United States, supra, 358 U.S. 307, and other cases cited part I above). The prosecution contended that there was an independent basis to arrest Kusano and Shipstead after Kusano attempted to dispose of the contraband. Nevertheless, it is at best debatable, and unresolved by the lower court, whether there was reasonable cause to accost, detain and question the suspects at that time and place in the absence of the information received from "Informant D." If that information did not in fact exist, or if it should have been excluded because it was obtained by a violation of the suspects' constitutional rights, the defendants were at least entitled to a determination by the trial court of whether the remaining information, which was never developed by the prosecution because of the defendant's request to deal with the matter of the questioned information, was sufficient to warrant the confrontation *73 which actually occurred; or, conversely, whether it would have occurred in the absence of that information.
(5) "The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private individuals not acting in concert with or as agents of governmental authorities. [Citations.]" (People v. Houle (1970) 13 Cal. App.3d 892, 895 [91 Cal. Rptr. 874]. See also People v. Baker (1970) 12 Cal. App.3d 826, 837-839 [90 Cal. Rptr. 508]; People v. Payne (1969) 1 Cal. App.3d 361, 365 [81 Cal. Rptr. 635]; People v. Temple (1969) 276 Cal. App.2d 402, 408 [80 Cal. Rptr. 885]; People v. Garber (1969) 275 Cal. App.2d 119, 126-127 [80 Cal. Rptr. 214]; and People v. Botts (1967) 250 Cal. App.2d 478, 481-483 [58 Cal. Rptr. 412].) Conversely, as noted in People v. Baker, supra, "It is clear that the fruits of a private search conducted at the instigation of, or with the participation of, the police will be deemed subject to the prohibition of the Fourth Amendment. [Citations.]" (12 Cal. App.3d at p. 837. See also Stapleton v. Superior Court (1968) 70 Cal.2d 97, 100-103 [73 Cal. Rptr. 575, 447 P.2d 967]; and People v. Tarantino (1955) 45 Cal.2d 590, 595 [290 P.2d 505]; and note Pacific Tel. & Tel. Co. v. Superior Court (1970) 2 Cal.3d 161, 176-177 [84 Cal. Rptr. 718, 465 P.2d 854]; and People v. Superior Court (1969) 275 Cal. App.2d 489, 497-498 [79 Cal. Rptr. 904].)
In Katz v. United States (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], the court ruled: "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a `search and seizure' within the meaning of the Fourth Amendment." (389 U.S. at p. 353 [19 L.Ed.2d at p. 583]. See also People v. Tarantino, supra, 45 Cal.2d 590, 595.) (6) Evidence obtained by clandestine eavesdropping by the police in violation of the speaker's constitutional rights must be excluded (People v. Tarantino, supra, at p. 595), and a search warrant is invalid if it is obtained upon information which was the product of an unlawful search (People v. Superior Court, supra, 275 Cal. App.2d 489, 492). (7) Also, contraband which is the fruit of the poisoned tree because the information leading to its discovery would not have been discovered except by the illegal actions of the police, must be excluded against the suspect whose rights were violated (Wong Sun v. United States (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]).
(4b) So here, if the police inspired illegal eavesdropping on the telephone call from Shipstead to Miss Werner (see Pen. Code, §§ 630-637.2), or unauthorized entry into Miss Werner's room, they should not be permitted *74 to use the information so obtained. On the issue of the manner in which the information was obtained, the informer was a percipient witness.
(8) "When it appears from the evidence that an informer is a material witness on the issue of the defendant's guilt, the informer's identity may be helpful to the defendant and nondisclosure would deprive him of a fair trial. (Honore v. Superior Court, 70 Cal.2d 162, 167....) The People must either disclose the informer's identity or incur a dismissal. (People v. Garcia, 67 Cal.2d 830, 836 ...; People v. McShann, 50 Cal.2d 802, 808....)" (Price v. Superior Court (1970) 1 Cal.3d 836, 842-843 [83 Cal. Rptr. 369, 463 P.2d 721]. See, in addition to the cases cited, People v. Williams (1958) 51 Cal.2d 355, 359 [333 P.2d 19]; People v. Singletary (1969) 276 Cal. App.2d 601, 603 [81 Cal. Rptr. 79]; People v. Lynn (1969) 271 Cal. App.2d 670, 672-673 [76 Cal. Rptr. 801]; and People v. Avila (1967) 253 Cal. App.2d 308, 321 [61 Cal. Rptr. 441] [cert. den. 390 U.S. 1032 [20 L.Ed.2d 290, 88 S.Ct. 1427], questioned on other grounds 1 Cal.3d at p. 852].) (9) On the other hand it is generally stated, "The privilege of nondisclosure of the informant's identity applies where the informant's role is limited to pointing the finger of suspicion at one who has violated the law and the informant has played no part in the criminal act with which the defendant is later charged, and is not a material witness on the issue of guilt. (People v. Lawrence (1957) 149 Cal. App.2d 435, 450 ...; to the same effect, see People v. McShann (1958) 50 Cal.2d 802, 808 ...; People v. Garcia, supra, at pp. 835-836.)" (People v. McCoy (1970) 13 Cal. App.3d 6, 12 [91 Cal. Rptr. 357]. See also People v. Meyers, supra, 6 Cal. App.3d 601, 609; People v. Sewell (1970) 3 Cal. App.3d 1035, 1038 [83 Cal. Rptr. 895]; People v. Martin (1969) 2 Cal. App.3d 121, 127 [82 Cal. Rptr. 414]; People v. Castillo, supra, 274 Cal. App.2d 508, 511-512; People v. Welch (1968) 260 Cal. App.2d 221, 225-226 [67 Cal. Rptr. 69]; People v. Williams (1967) 255 Cal. App.2d 653, 660 [63 Cal. Rptr. 501]; and People v. Rupar (1966) 244 Cal. App.2d 292, 299-300 [53 Cal. Rptr. 70].) (10a) An examination of the cases last cited indicate that they rest on the principle that the defendant must show by more than mere speculation that the informant has information that will bear on the issue of his guilt or aid him in some way (People v. McCoy, supra, 13 Cal. App.3d at pp. 12-13; People v. Thomas (1970) 12 Cal. App.3d 1102, 1112-1113 [91 Cal. Rptr. 867]; People v. Sewell, supra, 3 Cal. App.3d at pp. 1039-1040; People v. Martin, supra, 2 Cal. App.3d at p. 127), or on the principle that there was other independent evidence of guilt which rendered the evidence that could be furnished by the informant superfluous.
In Priestly v. Superior Court (1958) 50 Cal.2d 812 [330 P.2d 39], the court ruled: "... when the prosecution seeks to show reasonable cause for a search by testimony as to communications from an informer, either *75 the identity of the informer must be disclosed when the defendant seeks disclosure or such testimony must be struck on proper motion of the defendant." (50 Cal.2d 812, 819.) Thereafter, section 1881.1 was added to the Code of Civil Procedure to provide in substance as now found in subdivision (c) of section 1042 of the Evidence Code. (Fn. 3 above; and see Martin v. Superior Court (1967) 66 Cal.2d 257, 258-259 [57 Cal. Rptr. 351, 424 P.2d 935]; People v. Garcia (1967) 67 Cal.2d 830, 842, fn. 12 [64 Cal. Rptr. 110, 434 P.2d 366]; and People v. Welch, supra, 260 Cal. App.2d 221, 225, fn. 1.)
(4c) The statutory provision does not aid the prosecution because both the Evidence Code and the former section of the Code of Civil Procedure refer to "a reliable informant." There was no contention in this case that "Informant D" was a proved and reliable informant. Nor can it be contended that the defendant did not articulate a theory on which the information contained in the declarations of the informant should be excluded if they were acquired by unconstitutional means. He introduced testimony which gave rise to more than speculation that such could have been the case. It must be recognized that the defendant presumably is unaware of the testimony that might be supplied by the undisclosed informant on the issue of the manner in which he acquired his information. (10b) He only need produce "some evidence of a `possibility' that the unnamed informer is a material witness" on the issue in question. (See Price v. Superior Court, supra, 1 Cal.3d 836, 843; Honore v. Superior Court, supra, 70 Cal.2d 162, 170; People v. Garcia, supra, 67 Cal.2d 830, 840; People v. Williams, supra, 51 Cal.2d 355, 359.)
(4d) A more serious question is presented by the prosecution's suggestion that there is sufficient evidence of guilt which developed when Kusano attempted to dispose of what proved to be contraband. Under the peculiar circumstances of this case, where the court's ruling made it unnecessary to consider the reliability or the nature of the express information secured from informants "A," "B" and "C," where the officers went out of the county to detain, if not arrest, the suspects, and where the trial court never passed on the question of reasonable cause without the allegedly tainted evidence, it is not clear either that the suspects would ever have been detained, or that there was independent probable cause for their detention and subsequent arrest without the information received from "Informant D." In this case the revelation of the informant was more than just information as to the whereabouts of the suspects (see People v. Welch, supra, 260 Cal. App.2d 221, 225-226). It also purported to reveal that they were engaged in illegal activity.
Under the peculiar circumstances of this case, if the prosecution is permitted to stand on the privilege without disclosing the identity of an *76 unreliable informant, there is nothing to prevent the use of wiretapping or unconsented to eavesdropping of telephone conversations as a source of information for probable cause to detain, arrest and search. (Cf. Ojeda v. Superior Court (1970) 12 Cal. App.3d 909, 919-920 [91 Cal. Rptr. 145].) On balance this appears to be a case in which it was an abuse of discretion as a matter of law to fail to order the disclosure of the identity of the informant. To do less would be to afford an opportunity for the acquisition of incriminating information by unconstitutional means under the guise of privilege. The consequences of this error are discussed below.

III
The testimony incorporated from the preliminary examination included that of a criminologist employed by the County of San Mateo, who was qualified in the analysis and detection of narcotics and restricted dangerous drugs, and who had also purchased narcotics and dangerous drugs from known users and sellers and observed their use of drugs during eight years prior service with the State Narcotics Bureau. The trial court found him qualified to testify with respect to the illicit use of the restricted dangerous drug. He testified that there were 15.5 grams of desoxyephedrine in the envelope discarded by Kusano, and 29.65 grams found in Shipstead's sock; that the drug was used illicitly, sometimes in place of heroin and injected into the arm through a hypodermic syringe; that the average dose as so used was one-tenth of a gram; that the first package would constitute "15.5" [sic] ("155," when viewed in the light of all his testimony) doses; that a person would use between two and five doses, or between two-tenths and five-tenths of a gram per day. On that basis, one packet would supply at least 31 days of five injections, and the second over 59 days of five injections.
Following the foregoing testimony, the prosecutor addressed the following question to the witness. "So if this material were cut on a four-to-one basis you have indicated that it could be, this particular quantity would last how long?" The defendant correctly points out that there is no testimony in the record that the witness or anyone else had indicated that the material could be or was customarily cut on a four-to-one basis. Nevertheless, the witness was permitted to testify that the first package would furnish a supply for 100 days, and the second for approximately 200 days. Over defendant's objection that it would be pure conjecture on the part of the witness (see People v. Flores (1943) 58 Cal. App.2d 764, 769-770 [137 P.2d 767]), he was permitted to testify that the quantities possessed individually by each defendant represented quantities that would normally be possessed for sale rather than for purposes of individual use, because *77 it would take too long a period of time for any one individual to use up the supply.
(11a) It is unnecessary to determine whether the foregoing opinion should have been rejected because it represented an opinion predicated upon facts which were not in the record, or upon an erroneous mathematical calculation. The witness, when asked about the monetary value of the restricted dangerous drugs, testified as follows: "Total of the two would be 45 grams. It is designed to represent roughly three street ounces. Amphetamines vary in price, but the average price for an ounce of amphetamine is about $200.00 for an ounce. On that basis the wholesale value was $600.00. The illicit value of course, talking about packaging up in papers and we go back to the doses. This would sell for roughly $10.00 per paper and, for instance, People's Exhibit 2 alone on that basis would be worth over $5,000.00." There was nothing conjectural or equivocal about that answer. If defendant questioned the expert's mathematics he waived the right to so object, when he failed to cross-examine him.
(12) In order to sustain a conviction of possession of narcotics or a dangerous drug for sale, the prosecution must show that the accused had control over the contraband with knowledge of its character, and that such possession was for the purpose of sale. (See People v. Wilson (1967) 256 Cal. App.2d 411, 419 [64 Cal. Rptr. 172] [cert. den. 391 U.S. 903 (20 L.Ed.2d 418, 88 S.Ct. 1653)]; People v. Allen (1967) 254 Cal. App.2d 597, 602 [62 Cal. Rptr. 235]; and People v. Bravo (1965) 237 Cal. App.2d 459, 461 [46 Cal. Rptr. 921].) On review, the sole question is whether there is substantial evidence to sustain the implied finding that each of the foregoing elements has been established. (People v. Redrick (1961) 55 Cal.2d 282, 289 [10 Cal. Rptr. 823, 359 P.2d 255]; People v. Partin (1967) 254 Cal. App.2d 89, 91-92 [62 Cal. Rptr. 59]; and People v. Finn (1965) 232 Cal. App.2d 422, 426-427 [42 Cal. Rptr. 704].) (13) It is established that possession for the purpose of sale may be established by circumstantial evidence, and that the quality and value of the contraband held, particularly when viewed in the light of expert testimony, are factors which may indicate that the contraband was held for the purpose of sale rather than individual use. (See People v. Velasquez (1970) 3 Cal. App.3d 776, 787-788 [83 Cal. Rptr. 916]; People v. Allen, supra, 254 Cal. App.2d 597, 603; and People v. Robbins (1964) 225 Cal. App.2d 177, 184 [37 Cal. Rptr. 244] [cert. den. 382 U.S. 1017 (15 L.Ed.2d 531, 86 S.Ct. 631)].)
(11b) Defendant's attempt to distinguish the precedents last cited founders upon the evidence reviewed above which sustains a finding that the quantity and value of the 29.65 grams in his possession were more than an individual would normally possess on his person for his own use. His *78 reliance on cases which have invalidated statutory presumptions which derogate the accused's right to be convicted by evidence which convinces the trier of fact beyond a reasonable doubt (see Turner v. United States (1970) 396 U.S. 398, 423-424 [24 L.Ed.2d 610, 627-628, 90 S.Ct. 642] [rehg. den. 397 U.S. 958 (25 L.Ed.2d 144, 90 S.Ct. 939)]; and Leary v. United States (1969) 395 U.S. 6, 16-18 [23 L.Ed.2d 57, 70-71, 89 S.Ct. 1532]) is not relevant. There is a reasonable relationship between the quantity and value of contraband possessed by an individual and the nature of the use which he intends to make of it. The adverse inference drawn in this case did not violate constitutional standards, and there is sufficient evidence to sustain the conviction of possession for sale.

IV
(14a) It is contended for the first time on appeal that the defendant was deprived of the effective assistance of counsel because he and his codefendant Kusano were each represented by the same privately selected counsel throughout the proceedings in the trial court. (See People v. Baker (1968) 268 Cal. App.2d 254, 258 [73 Cal. Rptr. 758].) He asserts that because of this joint representation defense counsel, of necessity, was limited to attacking the proceedings leading to the arrest of both defendants on grounds which applied to them jointly, and could not vigorously cross-examine or argue to the point that whatever cause there might have been to arrest Kusano, who threw away the contraband, there was no cause to arrest Shipstead. (See People v. Donohoe (1962) 200 Cal. App.2d 17, 28 [19 Cal. Rptr. 454].) This premise evaporates when one considers the evidence of the relationship between the two defendants set forth above in part I. Moreover, Kusano was entitled to attempt to show, as was in fact done, that their trip was a joint enterprise and was disclosed in an unconstitutional manner when or after Shipstead telephoned to San Francisco. Defendant has failed to point out specifically how he was prejudiced by having the same counsel as his codefendant, or in what respect separate counsel could have furthered his cause. There is, therefore, a lack of prejudice, even if error could be demonstrated. (See People v. Stewart (1970) 6 Cal. App.3d 457, 465-468 [86 Cal. Rptr. 153]; People v. Bryant (1969) 275 Cal. App.2d 215, 224 [79 Cal. Rptr. 549]; People v. Morga (1969) 273 Cal. App.2d 200, 209 [78 Cal. Rptr. 120]; People v. Prince (1968) 268 Cal. App.2d 398, 407-411 [74 Cal. Rptr. 197]; and People v. Odom (1965) 236 Cal. App.2d 876, 878-880 [46 Cal. Rptr. 453]. Cf. People v. Chacon (1968) 69 Cal.2d 765, 776, fn. 3 [73 Cal. Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].)
Generally, alleged error must be raised in the trial court if it is to be considered on appeal. There is, however, precedent for considering failure *79 to appoint separate counsel although no objection was voiced during the trial. (See In re Hochberg (1970) 2 Cal.3d 870, 878-879 [87 Cal. Rptr. 681, 471 P.2d 1]; People v. Chacon, supra, 69 Cal.2d 765, 774; People v. Baker, supra, 268 Cal. App.2d 254, 256.)
In re Hochberg, supra, represents the invidious situation where one defendant employs counsel for himself and a codefendant, and by reason of a conflict in interest the latter is thrown to the wolves (see 2 Cal.3d at p. 878). In People v. McGowen (1969) 269 Cal. App.2d 740 [75 Cal. Rptr. 53], the court distinguished the other cases relied upon by defendant, as follows: "Martin claims he was denied effective aid of counsel because he and Dandy were represented at trial by the same attorney and a conflict of interest existed between them. The attorney was not appointed by the court but was retained by Dandy and Martin. No request by Martin or Dandy was made at trial for separate counsel and it is questionable, absent extreme circumstances, whether the court could have required either Martin or Dandy to accept different representation without their consent. [Citation.]
"Here the court did not participate in the process of Martin's attorney selection. People v. Chacon, 69 Cal.2d 765 ... and People v. Baker, 268 Cal. App.2d 254 ... relied upon by Martin, are not in point as those cases involved court-appointed counsel. The question involved in those cases was whether the court should carefully examine potential conflicts of interest before appointing one attorney to represent two codefendants. A court undertaking the burden of appointing counsel takes on the burden of avoiding conflicts which may result from appointing an attorney to dual representation. Where codefendants choose to be represented by one attorney, make no objection to that representation or request they be allowed to secure separate counsel at the trial, they, as with invited error, may not raise the issue on appeal absent a showing the trial was reduced to a farce or a sham. This is the appellate burden of one claiming inadequate legal representation. [Citations.] To hold otherwise would allow criminal defendants to create appellate issues by exercising their undoubted right to counsel of their choice." (269 Cal. App.2d at p. 745.) On the other hand, a court may scrutinize the record made by a private counsel. In People v. Thompson (1970) 13 Cal. App.3d 47 [91 Cal. Rptr. 341], the court stated, "The fact that the attorney was privately retained by defendant then by Washington and Williams does not compel us to find that defendant intelligently waived his right to effective counsel. (See Craig v. United States, 217 F.2d 355, 358-359, cited with approval in People v. Douglas, 61 Cal.2d 430, 439....) `A waiver is ... an intentional reliquishment... of a known right.... The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the *80 background, experience, and conduct of the accused.' (Johnson v. Zerbst, 304 U.S. 458, 464....)" (13 Cal. App.3d at p. 54.)
In reconciling the foregoing decisions as they apply to this case, it is not necessary to depart from established principles of appellate review. (15) When the defendant is represented by counsel serving him and another jointly, he may not be deemed to have waived the right to separate counsel when he has no knowledge of the right to such counsel. (See People v. Douglas (1964) 61 Cal.2d 430, 439 [38 Cal. Rptr. 884, 392 P.2d 964]; and People v. Thompson, supra, 13 Cal. App.3d 47, 54.) Nevertheless, before the judgment may be overturned in any case where no objection was raised below, the appellant must show that his trial was in fact reduced to a farce or sham. (14b) The record fails to reveal that the defendant secured other than adequate representation. Counsel diligently pressed his attack on the arrest of those caught red-handed. The record he established permits the qualified success which the defendant enjoys on this appeal. Defendant was not denied the effective assistance of counsel.

V
(16) It is conceded that defendant cannot be convicted of possession for sale in violation of section 11911 and of simple possession in violation of section 11910, because the latter is a lesser offense included within the former. (Pen. Code, § 1023; People v. Greer (1947) 30 Cal.2d 589, 598-599 [184 P.2d 512]; and People v. Grant (1969) 1 Cal. App.3d 563, 571 [81 Cal. Rptr. 812] [cert. den. 400 U.S. 845 (27 L.Ed.2d 82, 91 S.Ct. 91)].) The conviction of violation of section 11910 must be reversed. (People v. Grant, supra.)

VI
(17) Since the record permits the inference that the information leading to the detention and subsequent arrest and search of the defendant may have been improperly acquired, the identity of the informer who may be the only knowledgeable witness on that issue should be disclosed. Nevertheless, the record permits the inference that the information was properly acquired (see fn. 4 above). The testimony of the informer may fail to reveal any improper conduct, or that if there was unconsented eavesdropping or a trespass, it was not inspired by or in any way connected with the police. Moreover, the informant may be unavailable for reasons unconnected with any police conduct. (Cf. People v. Kiihoa (1960) 53 Cal.2d 748, 752 [3 Cal. Rptr. 1, 349 P.2d 673].) The conviction should not be reversed for this abuse of discretion on a collateral matter unless it develops that there was in fact illegal conduct, attributable to the police, which resulted in a detention, arrest and search which would otherwise not have occurred.
*81 An analogy for the procedure to be followed is found in People v. Coffey (1967) 67 Cal.2d 204 [60 Cal. Rptr. 457, 430 P.2d 15]. There the court found that the defendant's convictions on certain counts were erroneously obtained if a prior conviction, used to impeach him, had been obtained in violation of his right to counsel. The court remanded the case with directions to the trial court to hold a hearing on the validity of the disputed prior conviction, and then to proceed in accordance with the manner in which it determined that issue. (67 Cal.2d at pp. 224-225.)[5] So here the judgment should be reversed and the case should be remanded with instructions to the trial court to order the disclosure of the name of "Informant D," or the suppression of the evidence of his declarations, if his name is not disclosed, and thereafter to proceed according to law to determine, on such evidence as may be legally admissible, whether there was probable cause to detain and interrogate the suspects on their arrival from Portland.[6] *82 It is only if this issue is resolved in favor of the defendant that his conviction should be set aside, otherwise the conviction should be reinstated and the court should undertake all subsequent proceedings as may be necessary or rendered proper by motion of the parties.
The judgment of conviction of possession of a restricted dangerous drug in violation of section 11910 of the Health and Safety Code is reversed. The judgment of conviction of violation of section 11911 of the Health and Safety Code is reversed and the cause is remanded to the trial court for further proceedings under the direction and in conformity with the views herein expressed.
Molinari, P.J., and Elkington, J., concurred.
A petition for a rehearing was denied July 30, 1971.
NOTES
[1] Although the prosecutor's question refers to "the time you received this information from Portland," any inference that the informant himself was located in Portland is dispelled by the testimony that the informant was a person requested to furnish transportation from the San Francisco airport. The same comment applies to the prosecution's subsequent claim (in response to defendant's argument that a phone call to San Francisco was intercepted), that anyone seeing either of the men get on the plane at Portland could have telephoned the information concerning their arrival. There is no evidence to show that the officers received any such call.
[2] Evidence Code section 1041 provides in pertinent part: "(a) Except as provided in this section, a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) purporting to disclose a violation of a law of the United States or of this state or of a public entity in this state, and to prevent another from disclosing such identity, if the privilege is claimed by a person authorized by the public entity to do so and: ... [¶] (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; ... [¶] (b) This section applies only if the information is furnished in confidence by the informer to: (1) A law enforcement officer; ..."
[3] Evidence Code section 1042 provided in part at the time of the hearing (September 12, 1969) and decision (September 26, 1969) on the motion to suppress, as follows: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material.... [¶] (c) Notwithstanding subdivision (a), in any preliminary hearing, criminal trial, or other criminal proceeding, for violation of any provision of Division 10 (commencing with Section 11000) of the Health and Safety Code, evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, shall be admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure." (Italics added.)

In 1969 the section was amended (Stats. 1969, ch. 1412, § 1, p. 2891) effective November 10, 1969 by deleting the phrase emphasized above, and substituting "any otherwise admissible." A new subdivision (d) providing for in camera hearing was added.
The stipulation for the trial on the merits was entered into on November 4, 1969, but the matter was continued for decision and decided November 12, 1969.
[4] The sergeant testified to other information he had which would indicate that the interception of the information was not by any switchboard operator at Miss Werner's hotel, and, that, in any event, the interception or securing of the information whether or not in violation of the suspect's rights was not police inspired. Defendant was not bound by that testimony. The record is also open to the inference that Miss Werner herself, or "Shadow" was the alleged informant. If the former, the defendant was entitled to have the trial judge pass on the relative credibility of Miss Werner and Sergeant Christensen on that issue; if it was "Shadow," he would be a material witness on the issue of whether he or another viewed the message left by Miss Werner under lock and key (see also fn. 1 above).
[5] An analogy has been noted between a hearing to determine whether there has been a valid arrest or search and seizure, and a hearing to determine whether an in-court identification is tainted by an illegal or suggestive lineup or photographic identification procedure (People v. Citrino (1970) 11 Cal. App.3d 778, 782-783 [90 Cal. Rptr. 80]). In United States v. Wade (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], the United States Court of Appeals had reversed the conviction and ordered a new trial at which the in-court identification would be excluded (see 388 U.S. at pp. 220-221 [18 L.Ed.2d at pp. 1153-1154]). The Supreme Court ordered the case remanded to the district court and stated, "We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error, Chapman v. California, 386 U.S. 18, and for the District Court to reinstate the conviction or order a new trial, as may be proper. [Citation.]" (Id. at p. 242 [18 L.Ed.2d at p. 1166].) The court made a similar ruling in Gilbert v. California (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] (see 388 U.S. at p. 272 [18 L.Ed.2d at p. 1186]). Nevertheless, the Supreme Court of this state has consistently refused to merely vacate the conviction and remand for an evidentiary hearing on the crucial issue. (See People v. Martin (1970) 2 Cal.3d 822, 834-835 [87 Cal. Rptr. 709, 471 P.2d 29]; People v. Fowler (1969) 1 Cal.3d 335, 349-350 [82 Cal. Rptr. 363, 461 P.2d 643]; and People v. Caruso (1968) 68 Cal.2d 183, 189, fn. 2 [65 Cal. Rptr. 336, 436 P.2d 336]. Cf. People v. Menchaca (1968) 264 Cal. App.2d 642, 646-647 [70 Cal. Rptr. 843].) In those cases the tainted out-of-court identification had been received on the issue of guilt, whereas in this case the evidence in question was only received on the issue of probable cause. It, therefore, did not in law or in fact directly affect the question of defendant's guilt of possession for sale of the contraband found on his person after his detention, arrest and search.
[6] By petition for rehearing the People request modification of the opinion to permit an in camera hearing as provided in subdivision (d) of section 1042 of the Evidence Code (see fn. 3 above). Subdivision (d) refers to when "the informant is a material witness on the issue of guilt," whereas subdivision (c) deals with "evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the offense charged." Subdivision (c) requires a determination "upon evidence produced in open court, out of the presence of the jury." Under the particular facts of this case the testimony of the informant was considered relevant on the issues raised by the second type of hearing. Nothing herein should be construed as approving or disapproving the use of the procedure prescribed by subdivision (d) under other circumstances.