[Crim. No. 10264. Second Dist., Div. Four. June 28, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL HERNANDEZ GAMBOA, Defendant and Appellant.

Manuel Hernandez Gamboa, in pro. per., and Mae Dowd Rau, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harvey D. Unrot, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Officer Leeds, attached to the narcotics detail, was advised by an informant whom he characterized as "reliable" that a person named "Manuel" was dealing in narcotics and had sold to a woman named Valjean Vallejo and to two other named persons. Similar information was received, a few days later, from a second "reliable" informant. Acting on this information, together with information from a third person not characterized as reliable, the officer interrogated Valjean. She corroborated the information, giving defendant's full name, his address, his telephone number, the description of his car, and stating that she had been buying from defendant and could buy from him, in any amount, at any time. At a later time, Valjean identified a police "mug shot" of defendant as the person from whom she had been buying. Further investigation verified Valjean's information as to defendant's car, address and phone number. However, surveillance of defendant's apartment failed to disclose any unusual traffic or other suspicious circumstances. Inquiry of the landlady resulted in a statement that defendant did live in the apartment, that, in the past, there had been rather heavy traffic of girls coming and going at all hours, but that she thought defendant had moved his actual residence to some other place. Further investigation, through the telephone company, disclosed defendant's new address. The officer interviewed his new landlady, who verified defendant's residence and stated that she had had complaints from other tenants of a large amount of traffic to and from his apartment at all hours of the day and night. (The officer's testimony indicated that the landlady had no personal knowledge of the alleged traffic and that she did not advise him how heavy the traffic actually was supposed to be.)

Acting on this accumulation of information, Officer Leeds,

with his partner, went to defendant's apartment at about 11 a.m. Leeds knocked on the door and, being unlatched, it swung open. He called out "police officers" and, receiving no answer, leaned forward and looked around a corner into defendant's kitchen, where he observed defendant in the act of injecting a narcotic into his veins. The officers then entered the apartment, arrested defendant and searched the apartment. The search uncovered a large quantity of heroin, most of it in an uncut condition, togther with typical paraphernalia for cutting and packaging heroin for sale. The search also resulted in finding a pistol and ammunition—a possession unlawful in light of defendant's previous felony convictions.

At the trial, after Officer Leeds had refused to divulge the names of the two "reliable" informants, the court struck all of his testimony concerning information received from them. It is admitted that the officers had had no previous contact with Valjean and the People do not contend that she was a "reliable" informant.

The door to defendant's apartment, which bore the number of that apartment, was also the means of access to the fire escape and also bore the legend "fire exit." Anyone intending to use the fire escape would be compelled to go through this door, down a corridor, to the actual fire exit.

By a motion under section 995 of the Penal Code, by proper objection at the trial, and by a motion for new trial, defendant contended that he was the victim of an unlawful search and seizure and that the articles found in his apartment, being the ultimate fruits of that illegality, were inadmissible. We do not agree.

I

 It is clear that, once Officer Leeds saw defendant in the act of injecting himself, he had probable cause to enter the apartment, arrest defendant and, as a consequence of that arrest, search the premises. The issue then is as to the legality of his observation of defendant.

II

The People cannot rely on the "fire exit" situation. While defendant might be assumed to have given an implied consent to invasion of his apartment by any person legitimately seeking to use the fire escape for its emergency purpose, there is nothing to suggest that he had consented to anyone entering through his private door for any other purpose. And

it is not suggested that Officer Leeds was, in any way, concerned with using the fire escape.

### III

Unless, as we discuss below, the officer, *before* he knocked on the door, had probable cause to enter and arrest, his observation of defendant was unauthorized and illegal. ▮ While he did have, clearly, enough information to entitle him to seek out defendant for the purpose of interrogation (*People* v. *Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852]), he still was not authorized, on that theory, to enter into defendant's private premises without his consent. (*People* v. *Haven* (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927].) The Attorney General seeks to distinguish the *Haven* case on the ground that, in that case, the officer ''walked in'' without an invitation, whereas here he stood outside the threshold and merely leaned forward and peeked around the door jam. The distinction is without importance. The constitutional protection is one of freedom from invasion of the privacy of the home. (Cf. *Britt* v. *Superior Court* (1962) 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817]; *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288].) We are not here concerned with conduct observable through a window or open door by any casual passerby, as in *People* v. *Aguilar* (1965) 232 Cal.App.2d 173 [42 Cal.Rptr. 666]. Defendant was seated in his own kitchen, out of the line of view of outsiders; he was entitled to freedom from a Peeping Tom, with or without a policeman's badge.

### IV

▮ We conclude that the trial court was correct in deciding that Officer Leeds had, before he knocked on defendant's door, enough information to amount to a probable cause for the arrest of defendant and the subsequent search. Valjean's information was definite and positive. It was corroborated by similar information from another person, independently interviewed. Valjean's information also proved to be correct in every detail which could be checked: the address, the car, the phone number. Two landladies advised the officer that defendant regularly received a stream of visitors, who came and went, at all hours, staying only briefly. Other information, not specifically identified, had come to the officer that defendant was operating as a supplier of narcotics in his area of the city.

When all the information, except that from the landladies,

weighed as "non-reliable" is put together, we think that probable cause existed. ▉ The totality of information, coming from a number of independent sources, may be sufficient even though no single item meets the test. If the smoke is heavy enough, the deduction of a fire becomes reasonable.

V

▉ The court-appointed counsel on appeal argues that defendant was inadequately represented at the trial. The argument is without validity. Trial counsel preserved the point of unlawful search and seizure by a motion under section 995; he cross-examined the officer with marked skill and developed all of the facts on which his contention could be based; he was successful in having the most damaging testimony stricken; he objected to the introduction of the physical evidence as soon as it was formally offered—he could not have objected at any earlier stage. While he did (as do most defense counsel in similar cases) stipulate to the chemical tests of the exhibits and their result, there is nothing to suggest that there ever was any doubt that the substances seized were, in fact, heroin, or that complete proof could not have been made had it been demanded. Counsel is to be commended, and not criticized, for restricting the trial to matters actually in issue.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 25, 1965.