265 Cal.App.2d 642 (1968)
THE PEOPLE, Plaintiff and Respondent,
v.
LARRY D. GAINES et al., Defendants and Appellants.
Crim. No. 6381. 
California Court of Appeals. First Dist., Div. Four. 
Sept. 12, 1968.
 Michael T. Morton, under appointment by the Court of Appeal, for Defendants and Appellants.
 Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.
 CHRISTIAN, J.
 Defendants were convicted of possession of heroin (violation of Health and Safety Code section 11500). On appeal, they contend that in their nonjury trial the court's finding of guilt depended upon evidence procured *644 as the result of an unlawful search. Our holding is to the contrary.
 On June 8, 1966, at approximately 9 p.m., Inspectors Martin, Lawler, and Arrieta of the San Francisco Police Department went to an apartment building at 1040 Steiner Street, San Francisco, to conduct a narcotics investigation. The investigation was based on information received from an untested informant that appellant Jackson was selling narcotics in his apartment in that building. The police inspectors did not have either a warrant for the arrest of appellant Jackson or a warrant to search his apartment.
 The officers were admitted into the apartment house by the manager, who confirmed the fact that appellant Jackson occupied an apartment there. The consent of the manager to enter the building was given freely. She provided the officers with a key to the apartment directly across the hallway from Jackson's apartment. The officers entered and maintained surveillance of Jackson's apartment. Inspector Martin took a position behind the slightly opened door of his hiding place, where the doorway to Jackson's apartment could be directly viewed without detection by anyone entering or leaving Jackson's apartment. The hallway separating the doorways of the opposite apartments was approximately three to five feet wide.
 After keeping watch for approximately 10 minutes, Inspector Martin observed appellant Gaines approach and be admitted to Jackson's apartment. Inspector Martin recognized Gaines at that time as a man whom he had previously arrested for a narcotics violation. After 15 or 20 minutes had elapsed, Gaines emerged from Jackson's apartment. As Gaines stepped into the hallway immediately outside Jackson's apartment, Inspector Martin opened his door wide, and moved rapidly into the hallway towards Gaines. As Inspector Martin entered the hallway, Gaines looked in his direction, then made a backwards throwing motion with his left hand, crouching at the same time. Inspector Martin observed a small and compact, light-colored object leave Gaines' left hand as the throwing motion was made. Inspector Martin immediately concluded that the parcel contained heroin. It bounced back into Jackson's apartment. Looking past Gaines, Inspector Martin saw Jackson inside the doorway to his apartment holding the door open. Inspector Martin stepped rapidly towards Gaines in an attempt to retrieve the thrown object, momentarily detaining Gaines and thereby inflicting a scratch over his eye. Going past Gaines, Inspector Martin entered the apartment and retrieved the thrown object, despite Jackson's belated attempt *645 to close the door. Inspector Martin was able to keep his eye on the object during the entire sequence of events in which he retrieved it. The thrown object was seen by Inspector Martin to be a contraceptive containing a powdery substance which proved to be heroin.
 After entering Jackson's apartment and fielding the contraband, Inspector Martin observed in the kitchen area "a piece of plastic lying on top of the table with some powdery substance on top of it and also saw a hypodermic needle ... which was attached to an eye dropper which contained a brownish type fluid." A subsequent chemical analysis showed that the powdery substance contained heroin and that the brown liquid contained an opium derivative. A strainer and toy balloons were also observed by Inspector Martin on the kitchen table. Inspector Martin testified that in his opinion these items were narcotics paraphernalia such as are used for the packaging of heroin. After viewing all these incriminating items, Inspector Martin placed appellants Gaines and Jackson under arrest.
 [1] Appellant Gaines contends that his arrest was consummated upon Inspector Martin's sudden confrontation of him in the hallway.probable cause for an arrest concededly did not exist at that time; thus, it is argued, Gaines' ensuing furtive conduct (the throwing motion), having been evoked by unlawful police action, the fruit thereof was inadmissible (citing People v. Harvey (1956) 142 Cal.App.2d 728, 731 [299 P.2d 310]; cf. People v. Williams (1963) 220 Cal.App.2d 108, 114 [33 Cal.Rptr. 765]).
 In People v. Harvey, supra, the police approached the defendant, who was standing on a public street at night under suspicious circumstances, without probable cause for arrest. Although recognizing that an interrogation of defendant could properly have been made, the court held that the officers' approach was the first step in effectuating an arrest, and that the furtive conduct evoked thereby could not justify the arrest. This conclusion was apparently based on two factors. First, the officers testified that they had expressed to each other before the approach their intention of placing the suspect under arrest. Second, their first act was not to interrogate the suspect; rather, they took him into custody after a struggle and took a package of marijuana out of his hand.
 But in People v. Poole (1959) 174 Cal.App.2d 57 [344 P.2d 30], police officers parked their automobile near the defendant, who was walking along the street. One officer alighted, *646 then called to and approached defendant. Holding that under the evidence the approach was for investigative purposes, not to make an arrest, the court distinguished People v. Harvey, supra, and held that ensuing furtive conduct justified an arrest with the result that evidence seized in an incidental search was admissible.
 In the present case, the record contains no direct evidence concerning Inspector Martin's intention in confronting appellant Gaines. Appellants contend, however, that the circumstances of the confrontation indicate that an arrest, not an interrogation, was contemplated. But those circumstances also support a contrary conclusion. Gaines, who was known to the officers as a narcotics violator, was seen leaving an apartment which the inspectors were investigating for suspected narcotics traffic. Interrogation of Gaines under such circumstances was proper. (People v. Perez (1966) 243 Cal.App.2d 528, 532 [52 Cal.Rptr. 514]; People v. Mora (1965) 238 Cal.App.2d 1, 3 [47 Cal.Rptr. 338].) The determination of the trial court that the first contact was not an arrest is supported by substantial evidence and cannot be challenged on appeal. (cf. People v. Stout (1967) 66 Cal.2d 184, 192 [57 Cal.Rptr. 152, 424 P.2d 704].)
 [2] Once Gaines had thrown back into Jackson's apartment a parcel which the officers reasonably believed contained contraband, the officers were possessed of the following information: (1) an untested informant's statement that Jackson was selling narcotics in the apartment under surveillance; (2) verification by the apartment building manager that Jackson resided in the apartment under surveillance; (3) entry of appellant Gaines, whose prior arrest for a narcotics violation was known to the inspectors, into Jackson's apartment; (4) furtive disposal by Gaines of a small, round object into Jackson's apartment when confronted by police upon his departure from the apartment. In these circumstances there was probable cause to believe that Gaines had just procured narcotics from Jackson; the immediate arrest of both appellants was justified. (People v. Ingle (1960) 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577].)
 [3] Although reasonable cause cannot be based alone on information from an untested informer, such information can be given consideration by arresting officers when partially substantiated by subsequent events or investigation. (People v. Sandoval (1966) 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, *647 419 P.2d 187]; People v. Gamboa (1965) 235 Cal.App.2d 444, 447-448 [45 Cal.Rptr. 393].)
 [4] Association in a noncriminal context with one known to have been previously arrested for a narcotics violation is not enough in itself to establish reasonable cause (People v. Sanders (1956) 46 Cal.2d 247, 251 [294 P.2d 10]; People v. Govea (1965) 235 Cal.App.2d 285, 304 [45 Cal.Rptr. 253]), but can be considered by arresting officers.
 The attempt by Jackson to prevent entry by closing the apartment door could not be considered by the arresting officers, because that neutral act was merely an assertion of Jackson's right against search without a warrant. (Tompkins v. Superior Court (1963) 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113]; People v. Verrette (1964) 224 Cal.App.2d 638, 642 [36 Cal.Rptr. 819].)
 Although possibly no single aspect of the information acted on by the arresting officers was sufficient in itself, the totality of the information establishes the requisite probable cause. (People v. Gamboa, supra, 235 Cal.App.2d 444, 448.)
 Inspector Martin was not asked whether he entered the apartment partly for the purpose of arresting Jackson. [5] But his entry was independently justifiable for the purpose of seizing the heroin which Gaines tossed through the door; it would otherwise have been hidden or destroyed by Jackson.police officers may enter and sometimes search premises without a warrant and without probable cause for arrest under exceptional circumstances. (Warden, Maryland Penitentiary v. Hayden (1967) 387 U.S. 294 [18 L.Ed.2d 782, 787-788, 87 S.Ct. 1642]; Chapman v. United States (1961) 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776]; Johnson v. United States (1948) 333 U.S. 10, 15 [92 L.Ed. 436, 441, 68 S.Ct. 367]; People v. Roberts (1956) 47 Cal.2d 374 [303 P.2d 721].) One such exceptional circumstance is that of the threatened removal or destruction of evidence or contraband if it is not immediately appropriated. (Johnson v. United States, supra; People v. Huber (1965) 232 Cal.App.2d 663, 666-671 [43 Cal.Rptr. 65]; People v. Morris (1962) 211 Cal.App.2d 274, 278-279 [27 Cal.Rptr. 129].) Here Inspector Martin had every reason to believe that the contraband would be picked up and destroyed by Jackson if the officer did not instantly intervene.
 Once properly within the apartment to retrieve the thrown contraceptive, Inspector Martin was entitled to view that *648 which was plainly in view (the narcotics and paraphernalia on the kitchen table) and seize that contraband. (Harris v. United States (1968) 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992]; People v. Sandoval, supra, 65 Cal.2d 303, 308; People v. Jolke (1966) 242 Cal.App.2d 132, 147-148 [51 Cal.Rptr. 171].)
 One further contention requires brief notice. [6] The trial court rejected a defense offer of proof that it was Inspector Martin's long- standing policy to make any conceivable narcotics arrest, in spite of highly tenuous grounds for probable cause, in order to remove any suspected contraband narcotics from circulation. Appellants contend that the ruling was reversible error, inappropriately citing Evidence Code section 780, [fn. 1] because the offered evidence was relevant on the issue of Inspector Martin's intention in confronting Gaines. This contention is grounded upon language in People v. Harvey, supra, 142 Cal.App.2d 728, 731, which indicated that the officers' intention to arrest Harvey instead of merely interrogate him established that an unlawful arrest had occurred before the contraband was seized. But the fact of an arrest was firmly established in that case without regard to the state of mind of the officers; the contraband was pried out of the suspect's hand after he had been subdued in a struggle. Therefore we question whether Harvey is a holding that the subjective intention of an officer in approaching a suspect is always relevant to a determination whether an arrest took place. But that question is not before us. Here Gaines threw the contraband back into Jackson's apartment as soon as he saw the officers. That act, as we have seen supervened to justify entry into the apartment and ultimately to supply probable cause for the arrest of both appellants. Thereupon, any potential relevance of Inspector Martin's earlier state of mind evaporated.
 The judgments are affirmed.
 Devine, P. J., and Rattigan, J., concurred.
NOTES
[fn. 1] 1. Evidence Code section 780 deals with the credibility of witnesses. Inspector Martin's credibility as to the intention with which he approached Gaines was not in issue; he was never asked what his intention was.