71 Cal.App.3d 987 (1977)
140 Cal. Rptr. 13
THE PEOPLE, Plaintiff and Respondent,
v.
PETER ANTHONY HIRSCH, Defendant and Appellant.
Docket No. 28019.
Court of Appeals of California, Second District, Division Four.
July 26, 1977.
*989 COUNSEL
John H. Marshall for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roy Preminger, Edward T. Fogel, Jr., and Joyce L. Kennard, Deputy Attorneys General, for Defendant and Appellant.
OPINION
KINGSLEY, Acting P.J.
Appealing defendant was charged, jointly with John Biera, Richard Elias and Darlene Elias (count I) with conspiracy to possess, transport and sell heroin, in violation of section 182 of the Penal Code; (count II) with the sale of heroin, in violation of subdivision (a) of section 11352 of the Health and Safety Code; (count III) with possession of heroin for sale, in violation of subdivision (a)(2) of section 11351 of the Health and Safety Code; (count IV) with maintaining a place for the sale of heroin, in violation of subdivision (a) of section 11366 of the Health and Safety Code. One prior felony conviction was alleged. After a trial by the court, trial by jury having been duly waived, *990 defendant was found guilty under count III, but not guilty under counts I, II and IV. No finding was made as to the alleged prior. Defendant was sentenced to state prison; he has appealed; we reverse.
Acting on information from three informants, the police began a surveillance of an apartment building at 1255 Mariposa Street, in the City of Glendale. The information received from the informants, together with data obtained from official sources and the observations during the surveillance, caused the officers to believe that defendant, together with Biera and the Eliases, was engaged in selling heroin to "pushers," with defendant as the "master mind" or "boss," and the other three doing the direct selling.
On November 1, 1974, the officers broke into two apartments in the building, one (apartment 8) being the residence of the Eliases and the other (apartment 14) being the residence of Biera. The Eliases were found in their apartment and were arrested; defendant, with his wife and children, was found in apartment 14. He was arrested, that apartment was searched, disclosing contraband. Defendant (and later his wife) signed a form giving consent to search defendant's home, several blocks away. Additional contraband was found as a result of that search.
Defendant duly moved, under section 1538.5 of the Penal Code, to suppressed the evidence found in apartment 14 and in his home. The motion was granted as to the evidence found in apartment 14, it was denied as to the evidence found in defendant's home.
On this appeal, defendant contends:
(1) That his arrest was unlawful because not made on probable cause;
(2) That the entry by the police was unlawful for noncompliance with section 844 of the Penal Code; and
(3) That the consent to search defendant's home was invalid as being the fruit of the unlawful arrest and unlawful entry.

I
(1) (See fn. 1.) Although none of the three informants was a "reliable" informant within the meaning of the cases that define that term  two because they were untested and the third because he did not purport to *991 speak of his own knowledge  we conclude that the totality of the information possessed by the officers on November 1 was enough to give them reasonable grounds to arrest defendant.[1]

II
(2) The officers went to the door of apartment 14 and called out: "Police officers, you're under arrest for narcotics violations. Open the door." The officers saw a person look out a window near the door and then disappear. No sounds of retreating footsteps or other evidences of flight were heard. After waiting about five seconds, the officers kicked in the door and entered.
Although the officers complied with the knock and demand requirements of section 844, the trial court ruled that the entry was unlawful because they did not give the occupants sufficient time to admit them. The trial court said: "Now, the Court is going to find then that there was not compliance of 844 of the Penal Code. There was not substantial compliance. It was done in too much of a hurry. They didn't wait but  So anything that was found right then at the time of the breaking in, in No. 14, wasn't it, was illegal."
We cannot say that that factual finding was in error.

III
(3a) After the entry into apartment 14, and the arrest of defendant, the officers read him his Miranda rights. They then asked for permission to search defendant's home and he signed a consent form. The trial court held that that consent validated the search of defendant's home, saying: "But then finally, when they had the discussion with him and he gave the written consent, I feel that was attenuated, watered down, so that his consent was valid and legal consent and so everything will be suppressed except the contraband that they found over in his residence pursuant to his written consent."
(a) Defendant, relying on Brown v. Illinois (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254], contends that the giving of the Miranda *992 rights, after the entry and arrest, did not remove any barrier to any invalidity of the consent. We agree. In Brown, the Supreme Court said (at pp. 602-603 [45 L.Ed.2d at p. 426]): (4) "If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See Davis v. Mississippi, 394 U.S. 721, 726-727 (1969). Arrests made without warrant or without probable cause, for questioning or `investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a `cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to `a form of words.'"

IV
(3b) We turn, then, to the crucial issue in the case at bench: Does the same policy that requires the rejection of a consent obtained after an unlawful arrest (Burrows v. Superior Court (1974) 13 Cal.3d 238, 251 [118 Cal. Rptr. 166, 529 P.2d 590]) also require rejection after a violation of section 844? We conclude that it does. Section 844 has, as one of its purposes, the protection of the right of privacy established in this state by article I, section 1, of our state Constitution. If the police may violate section 844, and thereby effect an arrest and a consent, the same temptation exists to ignore the privacy that section 844 is, in part, designed to protect. Just as searches made possible by a violation of section 844 are held unlawful, so must a consent similarly obtained.
The judgment is reversed.
Dunn, J., concurred.
JEFFERSON (Bernard), J.
I concur in the result reached by Justice Kingsley in his opinion. However, I disagree with his view that the arrest of defendant was lawful. I would hold that there was a lack of reasonable or probable cause for a warrantless arrest.
Justice Kingsley cites a statement from People v. Gamboa (1965) 235 Cal. App.2d 444, 448 [45 Cal. Rptr. 393], to the effect that "The totality of information, coming from a number of independent sources, may be *993 sufficient even though no single item meets the test [of reliability]. If the smoke is heavy enough, the deduction of a fire becomes reasonable."
This theory is not an acceptable one when it comes to the question of whether there is probable cause to effect a warrantless arrest. It may be reasonable to show a deduction of fire from heavy smoke, but it is certainly not reasonable to draw a deduction of reasonable belief that defendant committed a felony because of a host of suspicious circumstances. If "the totality of information," relied upon by the arresting police officers to justify an arrest, is nothing but the total of information  all from untested or unreliable informants  the total is no better than each unreliable item. The smoke may be heavy, but the deduction of a fire under such circumstances is unwarranted and cannot be considered a reasonable deduction.
In the case at bench, the three informants fit the following description: two were untested and the third had no personal knowledge of the information imparted to the police. I cannot agree with the premise that if you add three items of unreliability, your total equals reliability. In my mathematics, the addition of three zeros still leaves you with zero. I fail to see how the total information received by the arresting officers is any better than each unreliable piece that makes up the total.
Since I find the arrest to be unlawful, I find the consent necessarily to be lacking in voluntariness irrespective of the question of whether a consent obtained after a violation of Penal Code section 844 automatically becomes an involuntary consent. "The rule is clearly established that consent induced by an illegal search or arrest is not voluntary, and that if the accused consents immediately following an illegal entry or search, his assent is not voluntary because it is inseparable from the unlawful conduct of the officers." (Burrows v. Superior Court (1974) 13 Cal.3d 238, 251 [118 Cal. Rptr. 166, 529 P.2d 590].) (Italics added.)
Respondent's petition for a hearing by the Supreme Court was denied September 22, 1977.
NOTES
[1] "The totality of information, coming from a number of independent sources, may be sufficient even though no single item meets the test [of reliability]. If the smoke is heavy enough, the deduction of a fire becomes reasonable." (People v. Gamboa (1965) 235 Cal. App.2d 444, 448 [45 Cal. Rptr. 393].)