[No. B013297. Second Dist., Div. Seven. Nov. 26, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL BAKER, Defendant and Appellant.

COUNSEL

Jaffe & Jaffe and Jay Jaffe for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Terry T. Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—Appellant Paul Baker was charged by information with one count of violating the dangerous weapons' control law by possessing a sawed-off shotgun (Pen. Code, § 12020, subd. (a)); two counts of receiving stolen property (Pen. Code, § 496); and one count of possession of marijuana for sale (Health & Saf. Code, § 11359). A jury found him guilty of all counts except possession of marijuana for sale. He was sentenced to two years on each count to be served concurrently and fined $10,000 plus $100 for restitution pursuant to Penal Code sections 672, 1214 and Government Code section 13967, subdivision (a) respectively.

The trial court denied Baker's motion to suppress (Pen. Code, § 1538.5) upon finding it was a consensual search. No findings were made regarding the search warrant.

 The question on appeal is whether the trial court erred when it denied the motion to suppress and found Baker had voluntarily consented to the search of his house.[1] We cannot reach the question of the effectiveness of Baker's consent until the validity of the search warrant is determined. For this reason we remand this case to the trial court for a full hearing on the search and seizure issues.

## I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

On or about May 3, 1984, Detective John Orr, an arson investigator for the Glendale Fire Department, swore out an affidavit for a search warrant. In it he stated an informant had told him on May 2, 1984, about a "fence" named Paul Baker located at 10556 Mount Gleason Avenue in Tujunga. He stated that the informant told him "there are several automobile engines kept in a garage on the north side of the property, two of which he actually helped steal. One was described as a blue engine and the other was red." Detective Orr then drove to Baker's residence and knocked on the side door. Although he heard footsteps, no one came to the door. He walked to the garage and saw an open door. Inside the garage he saw several automobile engines including the blue and red ones on the floor.

About 9 a.m. on May 3, 1984, Paul Baker was awakened by knocks on his door. He looked out through the window and ascertained the men were police officers. He watched them looking through his vehicles and garage. Baker remained inside his house until about 2:30 or 3:30 p.m. About six to eight officers were on his premises at various times during the day.

Between 2:30 and 3:30 p.m. Baker exited his house and asked the officers what was going on. He testified the officers told him they were looking for stolen stereos and television sets. He said he was told to sit down and he remained seated for about 20 minutes. He testified an officer told him a search warrant was en route and asked him if they could go in and search the house. Baker testified he replied "yes." After the search of the house was begun, Detective Orr arrived and served Baker with the search warrant.

Appellant filed a motion to suppress under Penal Code section 1538.5. At that hearing the court failed to rule whether the search warrant was valid. Instead it denied the motion on the express grounds appellant had voluntarily consented to the search of his home. The court did not address the issue

---

[1]Because no factual findings were made by the trial court regarding the validity of the search warrant, we do not consider all of the issues appellant raises concerning the validity of the search warrant and seizure or his ineffective assistance of counsel claim.

that if the search warrant were invalid as claimed, appellant's consent would be deemed involuntary as a matter of law.

II. APPELLANT'S CONSENT IS INEFFECTIVE IF A PRIOR ILLEGAL WARRANTLESS SEARCH SERVED AS A SOURCE OF PROBABLE CAUSE IN THE MAY 3, 1984, SEARCH WARRANT.

Baker first contends the May 2, 1984, search of his garage described in Detective Orr's affidavit in support of probable cause to issue the May 3, 1984, search warrant was an improper basis of the trial court's denial of his motion to suppress because it was a warrantless illegal search. Second, he argues his consent to search his house on May 3, 1984, was not free and voluntary but rather was a submission to authority because he was told a search warrant was en route. He contends any items seized from his home on May 3, 1984, pursuant to Glendale search warrant No. 688 are fruits of the poisonous tree because they were seized in violation of his Fourth Amendment guarantee of freedom from unreasonable search and seizure.

■ The Fourth Amendment of the federal Constitution as applied to the states under the due process clause of the Fourteenth Amendment, *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655-657 [6 L.Ed.2d 1081, 1090-1091, 81 S.Ct. 1684, 84 A.L.R.2d 933], and article I, section 13 of the California Constitution "protects individual privacy against certain kinds of governmental intrusion." (*Katz* v. *United States* (1967) 389 U.S. 347, 350 [19 L.Ed.2d 576, 581, 88 S.Ct. 507]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) Any search or seizure without a warrant is per se unreasonable, subject to certain specified exceptions. (*Katz* v. *United States, supra,* 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; *People* v. *Justin* (1983) 140 Cal.App.3d 729, 734 [189 Cal.Rptr. 662].) The test for determining if an illegal search has occurred "is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590]. Citations omitted.)

■ The People argue the trial court properly denied appellant's motion to suppress the evidence and instruct us to uphold the trial court's decision in a section 1538.5 proceeding if supported by substantial evidence because it is a full hearing on the issues with the court sitting as a finder of fact. (*People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Unfortunately the court neither made express findings of fact regarding several matters relevant to the validity of the search warrant nor was sufficient evidence elicited to allow us to determine

whether the search and seizure meet the constitutional standard of reasonableness. We cannot imagine evidence or imply findings to support a ruling when the application of the constitutional standard of reasonableness is involved. (See generally *People* v. *Manning* (1973) 33 Cal.App.3d 586, 601-602 [109 Cal.Rptr. 531].)

In his affidavit for a search warrant, Detective Orr stated: "Your Affiant drove to 10556 Greeley Ave [*sic* Mount Gleason] and knocked on a side door and heard footsteps inside. A curtain parted and then returned but no one answered the door. I walked to the garage and saw 9 vehicles parked on the property and an open door to the garage. Inside the garage I observed several auto engines including a blue and a red one on the floor."[2]

■ Although a police officer can enter a property to interview suspects or witnesses, *People* v. *Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852], they may not enter a dwelling or garage without consent or exigent circumstances. (See *People* v. *Hobbs* (1969) 274 Cal.App.2d 402, 407 [79 Cal.Rptr. 281].) On appeal the People argue Detective Orr did not enter the garage and impliedly only saw the corroborating items in plain view. There is no evidence establishing these facts. Indeed such evidence as exists tends to point in the opposite direction. Detective Orr stated in his affidavit he found an "open door" to the garage not an open garage door. The People did not offer independent proof nor did the trial court make a finding the garage door was open or that Orr was standing outside the garage where he could lawfully look into the garage. In addition, the affiant stated "[i]nside the garage I observed . . . ." In the absence of evidence, the words of the affidavit can be construed to suggest Detective Orr illegally entered Baker's garage for the purpose of finding corroborating evidence of his informant's statements. If so, Detective Orr's warrantless search on May 2, 1984, would be constitutionally impermissible.

In *People* v. *Cook* (1978) 22 Cal.3d 67, 75 [148 Cal.Rptr. 605, 583 P.2d 130] (superseded by statute where inconsistent with *Franks* v. *Delaware* (1978) 438 U.S. 154, 155-156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123, 1127-1128 [213 Cal.Rptr. 764]) the Supreme Court prohibited law enforcement officers from making confirmatory searches before applying for warrants. The Supreme Court concluded that "evidence seized under a warrant issued after the police conducted an illegal search to 'confirm' their prior belief in probable cause" must be excluded. (*People* v. *Cook, supra,* 22 Cal.3d 67, 75.)

---

[2]A copy of the search warrant was made part of the record by order of this court on February 25, 1986.

The court found in *People* v. *Winters* (1983) 149 Cal.App.3d 705, 707-708 [196 Cal.Rptr. 918], a case similar to the one at bar, that a prior warrantless search of an enclosed backyard tainted the subsequent warrant. It reversed the judgment on the basis that the evidence seized under the warrant should have been suppressed. In the instant case if the trial court finds Detective Orr did not merely enter the appellant's backyard but also entered Baker's garage, which is plainly protected by the Fourth Amendment, the subsequent search warrant would be invalid. (*People* v. *Hobbs, supra,* 274 Cal.App.2d 402, 407.) ■ It is clear that "a search warrant obtained upon information acquired by an illegal search is itself invalid." (*Lohman* v. *Superior Court* (1977) 69 Cal.App.3d 894, 898 [138 Cal.Rptr. 403]; *People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721].)

At the section 1538.5 proceeding the trial court found Baker voluntarily consented to the subsequent search of his house on May 3, 1984. ■ Although the general rule is the determination of the voluntariness of consent is a question of fact to be decided "from the totality of all the circumstances," *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 227 [36 L.Ed.2d 854, 863, 93 S.Ct. 2041]; *People* v. *Michael, supra,* 45 Cal.2d 751, 753, we conclude the determination of the effectiveness of Baker's consent is a question of law if it were the fruit of an illegal search warrant. (See *People* v. *Manning, supra,* 33 Cal.App.3d 586, 602, fn. 1; 2 La Fave, Search and Seizure (1978) § 8.2(d), pp. 649-650.)

In *United States* v. *Stine* (E.D. Pa. 1978) 458 F.Supp. 366, 370-371, the court found defendant's voluntary consent was vitiated because it was the product of an invalid search warrant. Even though it determined the defendant voluntarily consented to the search of his house, the court concluded it was impelled to reconsider the consent issue in light of the illegal search warrant. (*Id.,* at p. 370.) Finding defendant's consent to be the fruit of the illegal search warrant, the court declared "the Government may not be heard to rely upon that consent alone to break the chain of causation between the illegality and further fruits." (Citations omitted.) (*Id.,* at p. 371.) Consequently it suppressed the evidence under the holding of *Wong Sun* v. *United States* (1963) 371 U.S. 471, 484-485 [9 L.Ed.2d 441, 453, 83 S.Ct. 407]. (*Id.,* at pp. 370-371.)[3]

---

[3]The record is unclear, but it appears the People relied on the consensual search exception.

"Mr. Bowles: [Defense] If the entry in fact is illegal, then the product of that entry—all of that evidence would be suppressed, your Honor. I'm a little confused as to what—the basis that the prosecution is relying on for the entry. Previously they relied upon consent and at this point it is unclear as to whether they intend to rely upon consent—

"The Court: Yes. Is it—what is it you're relying on, Mr. Loveman?

"Mr. Loveman: Your Honor, I don't know what counsel is trying to suppress. He hasn't filed anything.

"But quite clearly in this particular motion not only is there consent and the officer has

■ The law is settled that a search and seizure based on consent immediately following an illegal arrest or entry is invalid because it is inseparable from unlawful official conduct. (*People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, 251.) Similarly, consent to search obtained after a violation of Penal Code section 844 is invalid. (*People* v. *Hirsch* (1977) 71 Cal.App.3d 987, 992 [140 Cal.Rptr. 13].) In *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, 249-250, officers searched defendant's office pursuant to a search warrant later found invalid because it was so broad it authorized a general search of the premises. Following the search of defendant's office, an officer asked if he could search defendant's automobile which was not listed in the warrant. The trial court found defendant consented to the search. (*Id.,* at p. 251.) The Supreme Court held the trial court erred in not granting a motion to suppress the evidence taken from the car. (*Ibid.*) It reasoned defendant's consent to search his automobile was the product of the unlawful search of his office pursuant to the invalid search warrant. (*Ibid.*)

Although this case is factually distinguishable from both *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, and *United States* v. *Stine, supra,* 458 F.Supp. 366, 369, 371, in that the officers did not have the invalid warrant in hand when initiating the search, we do not think this distinction is relevant. The allegedly imminent arrival of the search warrant would have had the same effect on Baker's consent as a claim the officer already had the warrant in hand.

The instant case is not like *People* v. *Terrill* (1979) 98 Cal.App.3d 291, 302 [159 Cal.Rptr. 360]. In that case officers arrived at defendant's home with both arrest and search warrants. Defendant was arrested about 6 a.m. and a search was immediately conducted. (*Ibid.*) Following a finding at the suppression hearing that the search warrant was executed in violation of Penal Code section 1533 permitting a search only between the hours of 7 a.m. and 10 p.m., the People presented evidence that the search was conducted pursuant to consent by defendant's mother. (*Id.,* at pp. 302-303.)

---

the right to be there and search, but even if this court—and it would be out of left field— but even if there was some evidence that I don't know about and it was involuntary consent, it would be an inevitable discovery pursuant to the warrant, anyway, and all the evidence would still be admissible.

"The Court: All right.

"Mr. Bowles: May I be heard with respect to that?

"The Court: Maybe it's a combination of both, depending on what you're seeking to suppress.

"Mr. Bowles: We are seeking to suppress the evidence that forms the basis for the first four counts, including the Hitachi 25-inch color television set, a .22 caliber gold centennial pistol, and the contraband in count IV, which is marijuana, I believe, and a sawed-off shotgun that is the basis for count I, a violation of section 12020."

On appeal the court agreed. It concluded *Burrows* did not apply since there was no inducement of Ms. Terrill's consent by a prior illegal search because the officers possessed a valid search warrant. (*Id.*, at p. 303.) In contrast, the officers who surrounded appellant's house did not present a warrant until after the search of Baker's house had begun and that search warrant may have been an invalid product of a prior illegal warrantless search.[4]

Appellant argues his consent to search his house was not free and voluntary but rather was a submission to authority because he was told a search warrant was en route.[5] ■ The United States Supreme Court held in *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788] a search cannot be justified on the basis of consent given after an official asserts that he possesses a warrant. The facts in *Bumper* are instructive in the instant case. Officers went to the house defendant shared with his grandmother and one told her "'I have a search warrant to search your house.'" (*Id.*, at p. 546 [20 L.Ed.2d at p. 801].) Defendant's grandmother consented. At the hearing on the motion to suppress, the prosecutor claimed he did not rely upon the warrant to justify the search but rather upon consent. (*Ibid.*) The court stated that the state's burden of justification cannot be met by "showing no more than acquiescence to a claim of lawful authority." (*Id.*, at pp. 548-549 [20 L.Ed.2d at p. 802].) It reasoned there can be no consent where there is coercion: "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion." (*Id.*, at p. 550 [20 L.Ed.2d at p. 803].)

At the section 1538.5 proceeding Baker testified he was told "[t]hat a search warrant was on the way and I could either let them in now or wait another 20 minutes, they'd go in anyways."[6] This was corroborated by Robbie Simon, a defense witness, who stated he heard the officers tell Baker "we do not have a search warrant yet but it might be on its way and they asked if it was all right if they entered the house." Likewise, a Los Angeles police officer testified that appellant was told "a search warrant was en route for his residence—or the residence." Baker further testified he was awakened

---

[4]The record does not suggest the officers attempted to deceive Baker into believing they possessed a warrant. (See *People* v. *Terrill, supra,* 98 Cal.App.3d 291, 303.)

[5]Appellant argues in the alternative that his consent was invalid by reason of an illegal detention minutes before he gave consent. We do not address the merits of this contention because we determine that any consent by Baker to allow a search of his house would be vitiated if Orr's prior warrantless search was improper.

[6]We note there is nothing coercive in an officer giving the defendant an option to consent or wait until arrival of the search warrant. (*People* v. *McClure* (1974) 39 Cal.App.3d 64, 69 [113 Cal.Rptr. 815], see also *People* v. *Gurtenstein* (1977) 69 Cal.App.3d 441, 450 [138 Cal.Rptr. 161].)

about 9 a.m. by knocks at his door and saw police "looking through" his cars and garage. He remained in his house and did not exit it until about 2:30 or 3:30 p.m. He testified it was clear the officers were waiting for something and made the choice to allow them into the house on the basis they would enter and inevitably find evidence.

 Although officers in this case did not tell Baker they presently possessed a warrant, we infer their statement that one is en route influenced Baker to consent to the search of his house where the incriminating evidence was located. Baker's consent cannot be disentangled from the news that a search warrant was imminent. As in *Bumper* v. *North Carolina, supra,* the consent and the authoritative nature of the search warrant were inextricably bound up together. The Supreme Court stated in that case: "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent *if it turns out that the warrant was invalid.*" (Fn. omitted.) (Italics added.) *(Id.,* at p. 549 [20 L.Ed.2d at p. 802].)

### DISPOSITION

This case is remanded for a full hearing on the propriety of the initial warrantless search of appellant's garage and all other issues relevant to the legality of the search warrant consistent with the views expressed herein. Should the trial court determine the search warrant is invalid it shall grant appellant's motion to suppress.

Thompson, J., concurred.

**LILLIE, P. J.**—I respectfully dissent. I would affirm the judgment.

. In the trial court defense counsel moved to suppress evidence found in defendant's residence (§ 1538.5, Pen. Code), but did not move to traverse or quash the search warrant, which I can well understand. Having reviewed the search warrant received in evidence on the hearing and made a part of the appellate record, I can only conclude it is a valid one. The validity of the search warrant,[1] as well as the issue of "a valid and voluntary consent" to search, was before the trial court on the section 1538.5 motion, and

---

[1]The record shows that defense counsel took a shotgun approach to his motion to suppress. He claimed defendant's consent was not voluntary because it was the product of the officer's claim a search warrant was "en route and it is simply a submission to the authority claimed by the officers"; if the consent was not valid, the search warrant did not support the entry to the residence because it is facially invalid in that there was no probable cause—it "is purely speculation with respect to that part of the affidavit that *refers to the arson*" (italics added); and the search warrant is general. Asked by the court if he was traversing the warrant or attempting to quash it, defense counsel said he was not attempting to go behind the information in the affidavit.

defense counsel argued that assuming the information contained in the affidavit to be accurate, there is "insufficient probable cause *relative to the arson*" (italics added) to support the warrant. However, the court based its denial of the motion to suppress on a finding of "a proper consent to search" stating it thus did not reach the issue with respect to the search warrant.

## I

### SEARCH WARRANT

That portion of the majority opinion holding that on remand a full hearing must be had in the trial court to determine the validity of the search warrant is predicated on what I consider to be a strained interpretation of the following portion of Detective Orr's affidavit supporting the search warrant: "Your Affiant drove to 10556 Greeley Ave [*sic*] and knocked on a side door and heard footsteps inside. A curtain parted and then returned but no one answered the door. I walked to the garage and saw 9 vehicles parked on the property and an open door to the garage. Inside the garage I observed several auto engines including a blue and a red one on the floor." The majority opine that this language can be construed to suggest that Detective Orr illegally entered defendant's garage—opened the door and entered the garage for the purpose of finding corroborating evidence of his informant's statements—which renders his initial observation of the engines on the garage floor an unlawful search. They further assert that inasmuch as it is on this initial invalid warrantless search the search warrant is based, the warrant is invalid and the search of defendant's residence and seizure of evidence found therein would be unlawful because his consent to search was based on the arrival of a *valid* search warrant.

I disagree for I perceive the issue differently. I would deny to defendant the full scale hearing the majority seek to give him and would affirm the judgment, for three reasons. First, the interpretation given by the majority to the language used in Detective Orr's affidavit is far-reaching and much too speculative on which to base an order of remand to the superior court for a full hearing on the validity of the search warrant and its bearing on consent. Second, defendant having had one hearing to determine the validity of the search of the residence based on a consent he claimed not to be voluntary because, among other things, it was in submission to police authority, and having lost, I would not give him a second chance to proceed on a new and different theory, one not raised in the court below, i.e., that the search warrant on which he relied in giving consent was invalid because it was based on an unlawful entry to and search of his garage; his theory below was that the search warrant is invalid because there is insufficient

probable cause "relative to the arson" in the affidavit to support it.[2] Third, the search warrant is a valid one based on Detective Orr's lawful observation of two engines described by his informant as stolen, in defendant's garage. In my view the only reasonable interpretation of Detective Orr's affidavit, giving the normal ordinary meaning to the common language used therein, is that after he talked with his informant who described the blue and red engines in defendant's garage as stolen, he drove to defendant's residence to talk to him, knocked and, receiving no answer, walked to the garage. He saw nine vehicles parked on the property. At the garage he observed an open garage door, looked inside while standing outside the garage and, through the open door, saw on the floor the two engines previously identified by the informant. I cannot conclude, as do the majority, that Detective Orr's affidavit adds up to an unlawful entry to and an invalid search of the garage; to the contrary, I can only construe the language to mean that Detective Orr did not enter the garage, and while lawfully standing outside of the garage, observed through an open door that which was in plain view. I find nothing illegal about this kind of conduct.

## II

### CONSENT

Defendant's consent to search his residence was found by the trial court to be a "proper consent" after a hearing on the issue of whether it was freely and voluntarily given. The question whether a consent to search was voluntary is one of fact for the trial court, and its resolution will not be disturbed on appeal if there is substantial evidence to support it. (*People* v. *Ruster* (1976) 16 Cal.3d 690, 701 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) There is such evidence here.

Appellant contends his consent was not freely given because of the presence of six or eight officers, and a choice offered by police that "a search warrant was on the way, and that he could either let them in now or wait another twenty minutes and they would go in anyway." His contention is without merit. The record does not demonstrate the kind of police conduct that would render such consent invalid. (*People* v. *James* (1977) 19 Cal.3d 99, 110 [137 Cal.Rptr. 447, 561 P.2d 1135].) Nor did the choice of con-

---

[2]At no time did the defense argue that the consent to search was vitiated by an invalid search warrant in that the initial observation of the engines on the floor of the garage constituted an unlawful entry and an invalid search. Instead, defense counsel framed the issues thus: defendant's consent to search is not voluntary because it was in submission to the authority of the officer who told him a search warrant was en route; and if the consent is invalid, the search warrant does not support the entry because the affidavit is insufficient in that "it is purely speculation with respect to that part of the affidavit *that refers to the arson.*" (Italics added.)

senting to the search or waiting until the arrival of the search warrant vitiate his consent to search. There was nothing coercive about this choice afforded him by the officer inasmuch as it told the defendant nothing more than that the officers had already done that which they were legally entitled to do—they had obtained a search warrant and were on their way to serve it. (*People* v. *Gurtenstein* (1977) 69 Cal.App.3d 441, 450 [138 Cal.Rptr. 161]; *People* v. *McClure* (1974) 39 Cal.App.3d 64, 69 [113 Cal.Rptr. 815].) In fact, the warrant had been issued, but not yet arrived; it was brought to the premises while the search was in progress. There was no deception, no coercion used in obtaining consent.

Appellant says he "felt" he was under arrest or illegally detained because the officer ordered him to empty his pockets, sit down and not move, thus his consent was given in submission to an express or implied assertion of authority. This, too, is a question of fact. (*People* v. *Superior Court* (*Peck*) (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829].) While defendant testified he was ordered to empty his pockets prior to arrest, the evidence is conflicting and the trial judge, as he had the right to do, resolved the factual conflict (*People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]) and impliedly found that at the time defendant gave consent to search he was under neither arrest nor unlawful detention. I would not disturb the trial court's implied finding. Temporary detention of an occupant of a house while a search is being executed is not an unlawful detention. (*Michigan* v. *Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340, 101 S.Ct. 2587]; see also *People* v. *Wilks* (1978) 21 Cal.3d 460, 467 [146 Cal.Rptr. 364, 578 P.2d 1369].)

Finally, there is no evidence to support appellant's claim that the search exceeded the scope of consent. Defendant made his consent to search neither with limitations nor conditional, nor did he in any manner object to the scope of the search while it was being made. (*People.* v. *Williams* (1980) 114 Cal.App.3d 67, 73-74 [170 Cal.Rptr. 433].)

I would affirm the judgment.